BETTY SANGUINETT, RESPONDENT, v. MAY DEPARTMENT STORES COMPANY, A CORPORATION, AND BESSIE HARRIS, APPELLANTS.—65 S. W. (2d) 162.

St. Louis Court of Appeals. Opinion filed December 5, 1933.

Motion for rehearing overruled December 19, 1933.

*Joseph N. Hassett* and *Ernest E. Baker* for appellants.

*Mark D. Eagleton, Dan P. Reardon, Frank L. Ramacciotti* and *Frank P. Aschemeyer* for respondent.

1164

McCULLEN, J.—This is a suit for damages for personal injuries alleged to have been sustained by respondent (plaintiff) when she was about to board an elevator in a department store in the City of St. Louis, Missouri. May Department Stores Company, appellant (defendant), owned the store, and Bessie Harris, appellant (defendant), was its employee in charge of the elevator. A trial before the court and a jury resulted in a verdict and judgment for plaintiff and against both defendants in the sum of $5,000. Defendants bring the case to this court by appeal.

Plaintiff's petition alleged that defendant May Department Stores Company owned and operated a large retail merchandise store in the City of St. Louis, wherein it invited the general public to come and transact business with it; that on the 24th of October, 1929, pursuant to said invitation, plaintiff was on the ninth floor of said store, and that said defendant's elevator stopped on that floor to permit persons to alight from and get on said elevator; that plaintiff was waiting to become a passenger on said elevator which was then

and there operated by defendant Bessie Harris, employee of defendant May Department Stores Company.

The petition alleged that the elevator was equipped with a collapsible steel or iron door, and that there was another steel or iron door leading into the elevator shaft; that when the elevator stopped to take on or discharge passengers it became necessary to open both of said doors; that on the occasion mentioned, while said elevator was stopped on the ninth floor, and while the exit door thereto was open to permit persons to board and alight therefrom, plaintiff attempted to board and enter said elevator as a passenger, and while she was in the act of passing from the ninth floor through the door of said elevator, the doors of said elevator closed with great force and violence, striking and injuring her.

The petition alleged that plaintiff's injuries directly and proximately resulted from the negligence and carelessness of defendants in the following respects:

1.  In negligenly suffering and permitting the elevator doors to be closed and to strike plaintiff while she was getting into and on said elevator.

2.  Negligent failure to allow plaintiff sufficient time to get into and upon the elevator before closing the doors.

3.  Failure to exercise ordinary care to discover that plaintiff was in the act of getting on the elevator before closing the doors.

4.  Negligent failure to warn plaintiff that the doors of the elevator were likely to be closed.

5.  An assignment of negligence based upon the humanitarian doctrine.

Each of the defendants filed a general denial.

No complaint is made that the evidence was insufficient to warrant the submission of the case to the jury. It will, therefore, be unnecessary to set forth at length the evidence adduced at the trial. As we proceed, we shall refer to such portions of the evidence as may be found necessary to a proper consideration of the errors complained of.

During the trial plaintiff was called as a witness and gave testimony with respect to her injuries, after which she was withdrawn and Dr. McFadden, a witness for plaintiff, was called to the witness stand. Immediately after plaintiff left the witness stand and had arrived at a point within a few feet of her seat outside the rail in the court room, she began to stagger and stumble, whereupon, her son arose and assisted her out of the court room. Immediately thereafter Mr. Ramacciotti, of counsel for plaintiff, who was sitting in the trial, left the court room, whereupon, Mr. Reardon, plaintiff's counsel who was conducting plaintiff's case, becoming aware of the absence of his client and associate counsel, requested the court to excuse him, and being excused he also left the court room. In a short

time Mr. Reardon returned, and out of the hearing of the jury, requested the court to adjourn so that Dr. McFadden could wait upon plaintiff outside the court room. His request was granted by the court. Mr. Hassett, counsel for defendants, who was conducting the defendants' case, noticed several members of the jury looking intently toward the back of the court room, and turning around he saw plaintiff stagger and saw her son arise and go to her assistance. It was about 12:30 P. M. when Mr. Reardon returned to the court room and asked for the adjournment. An adjournment to two P. M. was ordered by the court.

Upon the reconvening of court defendants' counsel moved the court to discharge the jury for the reason that the actions of plaintiff and her son in the court in the presence of the jury prior to the adjournment were prejudicial to the rights of defendants, and asked the court to have plaintiff's son sworn as a witness to show what took place in that connection in the presence of the jury. The court refused to permit the witness to be sworn for that purpose, saying that the court did not need testimony to show what had happened in the court room; that the court itself took notice that it was the son who helped plaintiff out of the room, and that there was no dispute as to that. After a discussion of this matter in the court's chambers, the court overruled defendants' motion to discharge the jury. This action of the court is assigned as error.

Counsel for defendants argue that during the time plaintiff had been on the witness stand prior to being withdrawn, she showed no indications of nervousness or distress and only began staggering as she approached her seat in the court room; that this must necessarily have impressed the jury because they knew that the court adjourned to permit Dr. McFadden to treat plaintiff, and that this action lent credence to Dr. McFadden's testimony, given thereafter, concerning plaintiff' injuries, and also lent credence to plaintiff's testimony as to the happening of the accident wherein it was alleged she received the injuries; that the court abused its discretion in refusing to discharge the jury under such circumstances.

There seems to be no dispute as to what actually took place in the court room during the incident complained of. Nothing appears in the record to show what Dr. McFadden did upon being excused from the stand. He was not asked for and gave no testimony concerning that matter when he later testified as to plaintiff's injuries. There is nothing to show any reference to the incident in the presence of the jury by anyone thereafter. In the discussion between counsel for the parties and the court with respect to the whole episode, Mr. Hassett, counsel for defendants, asked the court whether he had not correctly stated what had transpired as to the conduct of plaintiff and her son in the court room. The court answered, saying:

"The court admits that everything counsel has stated to the court

is substantially correct but there was nothing therein contained to warrant a mistrial, so I will overrule the request for a mistrial and the discharge of the jury.''

A wide discretion is given to a trial court in the conduct of a trial. This must necessarily be the rule, for otherwise the expeditious disposition of litigation could be greatly interfered with.

In this case the trial judge was a witness to all that transpired in the court room in the presence of the jury. He had before him the jurors, the witnesses and the lawyers. He not only could and did see all that occurred, but he was in a peculiarly advantageous position to understand and appreciate whether or not such occurrences had any prejudicial effect upon the jury. He ruled at the time of the incident and afterwards on defendants' motion for a new trial, that nothing had occurred which would justify him in holding that defendants' rights had been prejudiced. The jurors themselves were not questioned as to the effect the episode may have had upon their minds, hence there is no direct proof of prejudice. The law is well established in this State that in a matter of this kind an appellate court will defer in a large measure to the judgment of the trial judge in determining whether or not an occurrence during a trial prejudiced the minds of the jurors to such an extent as to prevent a fair trial. It is only when it appears from the record that there has been manifest abuse of the court's discretion in such a matter that an appellate court is warranted in interfering. The record herein fails to disclose anything which would warrant us in holding that the trial judge abused his discretion by refusing to discharge the jury. [Ullom v. Griffith (Mo. App.), 263 S. W. 876; Lewis v. Illinois Cent. R. Co. (Mo.), 50 S. W. (2d) 122.]

At the conclusion of the trial when the jury retired to consider its verdict the court gave the jury four forms of verdict. One form authorized a verdict in favor of plaintiff and against both defendants; one form authorized a verdict in favor of both defendants and against plaintiff; one form authorized a verdict in favor of plaintiff and against May Department Stores Company only; the fourth form authorized a verdict in favor of plaintiff and against defendant Bessie Harris only. The jury were out about one hour and fifty-five minutes on May 4, 1932, and not having arrived at a verdict, they were excused until ten o'clock the next morning. Before the jurors retired to the jury room the next morning the trial judge called them to the bench and withdrew from their consideration the two last above mentioned forms of verdict. They retired and later returned a verdict against both defendants. The court's action in withdrawing the two forms of verdict is assigned by defendant as reversible error.

To support this point defendants rely upon the case of McPeak v. The Mo. Pac. Ry. Co., 128 Mo. 617, 30 S. W. 170. In that case, on

February 20, 1893, the jurors had retired to consider their verdict. The next day at 10:30 in the morning they were called into court and asked if they had agreed on a verdict. The foreman of the jury answered: "No, sir." The trial judge then told the jurors that it was a great deal of trouble and expense to try the case, and that he had no expectation of ever getting better men to try it. One of the jurors spoke up and said: "Judge, there's eleven of us that could get together in about a minute." The judge then told them that verdicts are often reached after further consideration; that while he did not wish to put the jurors to discomfort unnecessarily, yet, experience showed it frequently takes time for jurors to get their minds together and he trusted and presumed every juror was acting rationally in the matter and that nobody was "acting from a dog-matic spirit merely for the purpose of asserting his opinion."

The jurors retired and later returned a unanimous verdict in favor of plaintiff in the case. The Supreme Court, on appeal, held that the remarks of the trial court caused the one juror who had been standing out for what he deemed right, to surrender his convictions and join the majority and that such action on the part of the trial court constituted reversible error.

It is clear from the foregoing resume that the facts in the case at bar are distinguishable from the facts in the above mentioned McPeak case.

When the trial judge in the McPeak case was informed that the jury stood eleven to one, his remark that he hoped and presumed nobody was "acting from a dogmatic spirit merely for the purpose of asserting his opinion" undoubtedly was believed by the jurors to be addressed to the one juror who was standing in the way of a verdict being reached. The effect upon the one juror could not have been other than to coerce him into agreement with the other eleven, as shown by his abandonment of his own convictions shortly thereafter.

The action of the trial judge in the case at bar in withdrawing the two forms of verdicts cannot be said to have indicated in the slightest degree his opinion with respect to the verdict the jury should return. The two forms of verdict which he permitted the jurors to retain showed absolute impartiality as between the parties. One form authorized a verdict for plaintiff and against defendants, while the other authorized a verdict for defendants and against plaintiff. It is not claimed in this case that any prejudicial remarks were made by the trial judge.

Counsel for defendants argue that the court's action in this matter caused the members of the jury to believe that the court felt that plaintiff was entitled to a verdict against both defendants. The answer to this argument immediately suggests itself. The jury could, with equal propriety, have believed the court felt the other way about

it, that is, that both defendants were entitled to a verdict against plaintiff.

Defendants' counsel point out that since the evidence showed that there were two sets of doors, one on the elevator cage, and one on the elevator shaft, and that the outer doors of the elevator were operated by compressed air, the jury might have inferred that the elevator door closed upon plaintiff because of some defect in the mechanical equipment, and that under such circumstances, both defendants would not be liable. From this basis it is argued that under the law of master and servant, the servant being liable only for acts of malfeasance, and not for acts of nonfeasance, defendants were entitled to have the jury pass upon this phase of the case, hence it was reversible error for the court to withdraw from the jury the two forms of verdict.

We are unable to agree with this contention for the reason that defendants made no such defense and there is no evidence whatsoever of any defect in the mechanism by which the operation of the elevator doors was controlled.

We find no error in the action of the court in withdrawing the two forms of verdict. On the contrary, we are of the opinion that the court's action in doing so was correct because it clearly appears from the pleadings and the evidence that plaintiff's right to recover against the defendant May Department Stores Company, if any, was based solely upon the doctrine of *respondeat superior* growing out of the alleged negligence of its employee, Bessie Harris. Under such circumstances, if the jury had returned a verdict against the May Department Stores Company alone, thus finding defendant Bessie Harris was not negligent, such a verdict would have been a nullity because as negligence of the May Department Stores Company could only arise through the negligence of its servant, Bessie Harris, and if she was not negligent then certainly the May Department Stores Company was not negligent.

In the case of Michely v. Miss. Vall. Struct. Steel Co., 221 Mo. App. 205, 299 S. W. 830, plaintiff, an employee, sued his employer and his foreman, charging that his injuries resulted from the foreman's negligence. The jury's verdict was in favor of plaintiff and against the employer, but in favor of the foreman and against plaintiff. The court said that it appeared that plaintiff's case sought to hold the defendant steel company upon the principle of *respondeat superior,* and then went on to say that:

"If defendant steel company is liable at all under the pleadings and evidence, it is liable by reason of the negligence of its servant, defendant Doerner, and not otherwise. But the jury returned a directed verdict in ·favor of the defendant Doerner, but against the defendant steel company in the sum of $5,000. This will not do, for, if the servant who causes the injury is free from liability

therefor, liability cannot attach to the master, for his liability, if any, must be predicated upon the negligent act of his employee. This rule of law is so well established that the reasons therefor no longer need be reiterated.'' (Citing cases.) [Michely v. Miss. Vall. Struct. Steel Co., supra.]

In the case at bar, under the pleadings and the evidence, it was a mistake for the court to permit the two forms of verdict to be given to the jury, and the court merely corrected its own mistake by withdrawing them and thus prevented the possibility of a verdict being returned which, under the law, it would have been required to declare a nullity.

We hold there was no prejudicial error in the action of the court in this connection.

The next contention of defendants is that the court committed reversible error in allowing plaintiff's witness, Dr. Gallagher, to answer a leading question as to his opinion concerning plaintiff's injuries and ailments. The question was as follows:

''Q. Doctor, from your examination in which you found, with reference to the reflexes, the upper and lower reflexes in the condition that you found them, with reference to the pupils, what would you say as to whether or not that condition indicates an organic change within the walls of the central nervous system?''

This witness had given testimony to which the question directed his particular attention, and while it was somewhat leading in its nature, we hold it was within the court's discretion to allow it to be answered. [Cunningham v. Doe Run Lead Co. (Mo.), 26 S. W. (2d) 961; 28 R. C. L., sec. 183, p. 591.]

Counsel for defendants urge that Dr. Gallagher did not qualify as an expert witness on nervous ailments and that it was reversible error to permit him to give his opinion concerning such ailments, especially when he had referred the patient (plaintiff) to a neurologist. The record shows that after graduating from a medical school in 1920, Dr. Gallagher practiced his profession in the City of St. Louis, and was on the staff of two hospitals in this city. He treated plaintiff for the first time on November 7, 1929, and was in charge of her case as her physician from that time until some time in the month of July, 1930, when he referred her to Dr. McFadden a neurologist. His testimony shows that he saw plaintiff on numerous occasions and prescribed for her as her physician. The court committed no error in permitting him to give testimony with respect to her condition. We find no support in the evidence for defendants' contention that Dr. Gallagher's testimony and opinion were based upon the testimony and opinion of Dr. McFadden. The two doctors gave similar testimony as to plaintiff's condition, but that does not support such contention. Furthermore, the fact that Dr. Gallagher referred the patient (plaintiff) to a neurologist did not render him incompetent

as a witness to give testimony with respect to her condition, even though such testimony related to nervous disorders. It is true Dr. Gallagher did not claim to be a neurologist and did not qualify as a specialist in nervous disorders, and these facts might well have been used as an argument to the jury going to the weight of his testimony, but they certainly did not disqualify him as a witness nor render his testimony incompetent. [Seckinger v. Philibert & Johanning Mfg. Co., 129 Mo. 590, 606, 31 S. W. 957; Spaulding v. Edina, 122 Mo. App. 65, 97 S. W. 545.]

Defendants urge that the court erred in submitting to the jury, in plaintiff's Instruction No. 1, the issue of defendants' negligence in failing to discover plaintiff while boarding the elevator. It is contended that there was no evidence to support such charge; that plaintiff testified that the operator told her as she was about to step on the elevator that too many people were already on the elevator. It is argued that such evidence shows defendant's operator did discover plaintiff, and that there was no negligence in this respect. We find no support for this contention. The record shows that plaintiff testified she did not know who made the remark referred to. However, the giving of the instruction could not be held to be reversible error, even if defendants' statement were correct. The instruction, after requiring the jury to find certain facts, was as follows:

". . .; and if you further find that in thus closing said doors, under the circumstances aforesaid, if you do so find, said defendant Bessie Harris did fail and omit to exercise ordinary care, in that said Bessie Harris did cause, suffer and permit said elevator doors to be closed while plaintiff was in the act of getting onto said elevator, if you so find, and in that said Bessie Harris did fail to exercise ordinary care to discover the plaintiff in the act of getting onto said elevator, if you so find, and in that said Bessie Harris did fail to exercise ordinary care to warn the plaintiff that said elevator doors would or were likely to be closed, if you so find, then the court instructs you that if you find said Bessie Harris was guilty of negligence in the above respects, and that plaintiff was injured as a direct and proximate result of said negligence, if any, then the plaintiff is entitled to recover, and your verdict will be in favor of the plaintiff and against defendants Bessie Harris and May Department Stores Company."

It will be noted that the instruction presented the alleged negligent acts of defendants in the conjunctive. It required the jury to find, as a prerequisite to a verdict for plaintiff, that defendants were negligent in permitting the doors of the elevator to be closed while plaintiff was in the act of getting on the elevator, *and* in failing to discover plaintiff in the act of getting on the elevator, *and* in failing to warn plaintiff that the elevator doors were likely to be closed.

1172

Even though the evidence was insufficient to justify the inclusion of one act of alleged negligence, there was ample evidence to warrant the instruction with respect to the other acts of negligence hypothesized therein, and the inclusion of negligent failure to discover plaintiff simply cast an extra burden on plaintiff and was not prejudicial to defendants. [Troutman v. East St. Louis Cotton Oil Co. (Mo. App.), 224 S. W. 1014; Houston v. American Car & Fdy. Co. (Mo. App.), 282 S. W. 170, 171; State ex rel. Pevely Dairy Co. v. Daues et al., 316 Mo. 418, 289 S. W. 835.]

We find no reversible error. The judgment is affirmed. *Becker*, *P. J.*, and *Kane, J.*, concur.