Ernest PATE, Employee, Respondent,

v.

ST. LOUIS INDEPENDENT PACKING COMPANY, DIVISION OF SWIFT AND COMPANY, a Corporation, Employer, and Security Mutual Casualty Company, Insurer, Appellants.

No. 32886.

St. Louis Court of Appeals.

Missouri.

April 16, 1968.

Motion for Rehearing or to Transfer to Supreme Court Denied May 14, 1968.

Application to Transfer Denied July 8, 1968.

Robertson, De Voto & Wieland, Morton K. Lange, St. Louis, for appellants.

Harry J. Nichols, St. Louis, for respondent.

BRADY, Commissioner.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis affirming an award of the Industrial Commission of this State in favor of the employee and claimant, Ernest Pate. The employer appeals. We will refer to Mr. Pate as the claimant and to the employer by that designation. We have determined claimant's motion to dismiss this appeal should be overruled and will rule this appeal on its merits.

█ In appeals of this nature we are to view the record in the light most favorable to the findings of the Industrial Commission considering the favorable inferences which it had a right to draw from evidence before it. We will state the evidence in accordance with that rule except as to such portions of the transcript as it may be necessary to set forth in order to fully understand the employer's allegations of error and the evidence pertaining thereto. Riggs v. A. P. Green Fire Brick Co., Mo. App., 376 S.W.2d 635; Mo.Digest, Workmen's Compensation, ⚭1939.

As originally filed the claim alleged the accident occurred in August of 1963 and defendant raised the question of the Statute of Limitations in its answer since the filing occurred on September 10, 1964. At the hearing before the referee claimant amended his claim and at trial testified the accident occurred "about" September 24, 1963. His testimony was he slipped on a piece of liver at work that day while pulling a

wheelbarrow type hand-truck with the result the handle of the truck jabbed or jammed him in the back causing him to fall forward. He felt a terrific pain in the lower part of his back but returned to work. The pain got worse and about forty-five minutes later he went to the dispensary and saw a nurse whose name he did not know. He told her he had "just had a fall" and hurt his back. The nurse wrote a report and gave him some pain pills whereupon he returned to work. At trial he identified the witness Jo Ann Scott as the nurse he saw on this occasion. Her testimony was that he did not see her about this accident nor concerning any complaints of injury to his back. She testified that she and Nurse Cothran were the only nurses working at the Company dispensary at this time. Claimant further testified that he came back to the dispensary between 2:30 and 3:00 o'clock on that same day and then saw both Mrs. Scott and Mrs. Cothran. The nurses sent him home, gave him some pills, and instructed him to see his family doctor. Again he was not examined. The dispensary records show the claimant was in the dispensary on October 1, 1963. The notation then made reads as follows: "States pains first started in neck 9–23–63, then spread to arms 9–25–63 now is in his back."

Claimant went straight from work to see Dr. Younge, his family doctor. His testimony was Dr. Younge was about seventy years old and that when he tried to explain to him what happened Dr. Younge wouldn't listen. He was given a heat treatment that day by Dr. Younge who also tested his reflexes and gave him an examination that lasted approximately one-half hour. He did not return to work the next day and after another visit to the doctor entered the hospital and stayed from October 7, 1963 until October 18, 1963. He did not describe the accident in detail to Dr. Younge or to anyone at the hospital. While in the hospital the only treatment he received was a hard bed and pills. X-rays were taken. The hospital record shows a notation as of October 8, 1963 by Dr. Younge as follows: " 'This man works for the Independent Packing Company. On the first of this month he came to my office with severe lumbo-sacral pain. He was treated but got no result and so he was sent to the hospital. He does quite a bit of lifting on the job, but does not know if this has anything to do with his back trouble.' " The hospital records also contain notes signed by the nurse on duty reading: " 'conscious and rational, CC (chief complaint) back injury, advised; * * *.' " The final diagnosis was lumbo-sacral sprain. The dispensary records are silent as to any accident such as that described by the claimant and Nurse Cothran testified that if claimant had described such an accident she would have entered it in his record. He was off work from October 2, 1963 to November 12, 1963. When he returned to work he did the same work as he had done before his alleged injury. He continued to visit the dispensary but the records show that after he returned to work his chief complaint was to his neck and he made no complaint about his back until February 4, 1964. Claimant testified he continued having pain in the lower part of his back and on January 15, 1964 he gagged while brushing his teeth; he coughed while in a leaning position with the result that he had sudden sharp severe pain across his lower back. He went to see Dr. Younge about three days later and reported this incident and received heat treatment and pills. He was again admitted to the hospital on February 4, 1964 and stayed until the latter part of that month. The hospital records note the teeth brushing incident but again are silent as to any alleged accident such as the one described by the claimant. When he came out of the hospital he went to the Company doctor who informed him he had the symptoms of a ruptured disc. The claimant did not tell the doctor about slipping on the piece of liver. The pain he experienced during this time was the same type of pain he had when he fell in September and which had continued since then. The treatment at the hospital consisted of heat, bed rest, and

oral medication. Claimant's testimony was that no one at the hospital asked him how he was injured and so he told no one.

As soon as he was released claimant went to see the Company doctor. After claimant signed a statement he would be financially responsible for the bill, the Company doctor made an appointment for him to see a Dr. Morgan. Dr. Morgan examined claimant and recommended that he buy a back support and stay off work for two weeks when he should return for another examination. On March 12th Dr. Morgan wrote a letter to Dr. Maghee, a physician employed full time by the employer, in which he noted the following history: "The patient states he had the first episode of back pain in September of 1963 while lifting at work." In response to this letter he received the following: "Dear Dr. Morgan: Please refer to your letter of March 12, 1964 regarding the above named patient. In your statement concerning the onset of this pain, our records do not show any notation of injury. Therefore, I do not think that this could be accepted as a compensation case readily. Accordingly, I would suggest that this be handled as an illness. This man's insurance will cover diagnostic x-rays to a limited extent and, should he need additional hospitalization and treatment, the same would apply. May I suggest that your letter be re-submitted without reference to the controversial statement noted in the above paragraph. Very sincerely yours, ST. LOUIS INDEPENDENT PACKING COMPANY /s/ D. E. Cozart for Ralph V. Gieselman, M.D., Medical Department". Dr. Cozart is employed by Dr. Maghee. Dr. Cozart denied any knowledge of this letter. Dr. Morgan then wrote under date of March 26 stating: "In reviewing this man's past history and previous record, it would appear that the pain he is having at this time is entirely different than the previous episode. The onset of the present illness was sharp and sudden while bending over brushing his teeth on February 4, 1964. * * * He will be admitted under insurance covering illness rather than compensation." Claimant was hospitalized under Dr. Morgan's care from March 28 through April 10, 1964. A myelogram and a laminectomy at L4–5 were performed. While at the hospital a history was taken by the resident and by an intern. That taken by the resident indicated: " * * * in the late summer of '63 the patient hurt his back lifting some meat at work." That taken by the intern was: " 'This patient hurt his back in July of '63 lifting a load of meat.' " Dr. Morgan's history at the time of the claimant's admission to the hospital under his care was: "Low back pain in left sciatic since September of 1963, improved until patient bent over to brush teeth and gagged." The claimant returned to work about September 1, 1964.

Claimant's supervisor was a man named Dooley. He has no record of any accident as testified to by the claimant. Dooley admitted that although he is supposed to know about and keep records of every accident it sometimes happens that a man will get hurt, go to the dispensary and come back when Dooley is not around so that he would not know of it. His records showed no accident reports for the claimant at all. The dispensary records show numerous trips by claimant to the dispensary for cuts and other causes.

Claimant offered expert testimony to the effect the accident to which he had testified was the cause of the ruptured disc resulting in a 30% disability. His testimony was given in response to a hypothetical question—was the ruptured disc a permanent condition resulting from the blow claimant testified he received to his back. On cross-examination claimant's medical expert was asked whether, based on the evidence as to claimant's back, he would say it was "a good normal back". His answer was that claimant ." * * * did not have a perfect back, but something happened later which made him much worse and necessitated surgery, * * * my educated guess is he probably had a herni-

ated nucleus somewhere along the line, then, when this blow hit him it ruptured, and that necessitated the surgery." His testimony was that a herniated disc improves from time to time while a ruptured disc does not. He was also asked on cross-examination to assume the gagging and tooth brush incident and asked " * * * do I understand you to say that even though it would cause—coughing or choking would cause an inner spinal pressure to be increased that that had and played no part in causing this herniated disc to rupture?" His answer was: "That's my opinion. I've never seen one that I thought was caused that way." Later upon cross-examination he was asked the following question and gave the following answer: "Insofar as the pain was concerned this incident on February the 4, 1964 had nothing whatever to do with this man's condition? A My opinion is that that did not produce the tearing or the rupture of the disc."

The amount of the award by the Industrial Commission is not at issue in this appeal.

The referee found claimant "did not sustain an accident on or about September 23, 1963, arising out of and in the course of his employment" and denied compensation. The Industrial Commission found the accident "(1) * * * occurred on September 23, 1963, in the City of St. Louis, Missouri, when employee slipped on a 'chunk of liver', causing him to fall with the resultant blow from the wagon he was pulling following immediately thereafter; (2) That it is reasonable and probable that employee sustained injuries to his back as a direct result of said accident; * * *." The trial court affirmed the award of the Industrial Commission.

■ Our duty upon review of this appeal is to decide whether the Industrial Commission could reasonably have made its findings and reached its result on consideration of all the evidence before it. We are not to substitute our judgment on the evidence for that of the Industrial Commission but we are authorized to set aside the decision if we find it clearly contrary to the overwhelming weight of the evidence. Riggs v. A. P. Green Fire Brick Co., supra; Mo. Digest, Workmen's Compensation, supra.

The employer contends the claimant failed to establish the causal connection between his disability and the accident in September of 1963. We cannot agree. The evidence offered by claimant's medical expert was that while claimant did not have a perfect back and may have had a herniated nucleus prior to the accident, the blow he testified he received from the wagon he was pulling, as hypothesized to the expert witness, caused the ruptured disc and necessitated the surgery. The employer complains about the language set out earlier in this opinion wherein the witness gave an "educated guess". It should be noted the "educated guess" was directed to the existence of a herniated disc prior to the accident and injury of which claimant complains and not to the essential question which was the blow he received when he slipped on this piece of liver causing the ruptured disc. The witness's testimony as to that matter was positive and direct. There was no guess, educated or otherwise, involved. The employer also complains claimant's medical expert's testimony must be disregarded for the reason he overlooked the tooth brush incident. As set out earlier herein excerpts from this witness's testimony show that he did not overlook it but his opinion was it did not cause the disc to rupture. When read in context and in its entirety the testimony of claimant's medical expert was that the blow from the handle of the wagon caused claimant's injury.

■ The employer also complains that claimant's medical expert based his opinion the tooth brushing incident was not the cause of claimant's back injury on his testimony "I've never seen one that I thought was caused that way." As plaintiff puts it in his brief: "He did not say it could not happen, or demonstrate that it was scientifically or medically impossible; and no

facts were offered in evidence to show why it was even improbable. There was no showing how many ruptured discs the doctor had seen in his experience, or even that he was a specialist in this particular field." There is no merit to this contention. Claimant's expert witness gave his opinion and that opinion was accompanied by the recitation of reasons contained in the hypothetical question which he considered adequate to support his opinion. Under those circumstances his evidence constitutes substantial evidence and we cannot say it is without basis. Riggs v. A. P. Green Fire Brick Co., supra, 376 S.W.2d 642 [5] [6] and cases there cited. There would be no end to an expert witness's testimony if he was required not only to give his opinion as to what did cause claimant's injury but also to demonstrate that it could not have happened in any other way.

■■■ With respect to the employer's contention the testimony offered by claimant's medical expert must be disregarded for the reason there was no showing the doctor had seen any or how many conditions of this kind previously or that he was a specialist in this field, that contention is totally without merit. It has long been the rule that the extent of the medical expert's experience or training in a particular field merely goes to the weight of his testimony; it does not in any way disqualify him as a witness nor render his testimony incompetent. See Sanguinett v. May Department Stores Co., 228 Mo.App. 1161, 65 S.W.2d 162, l.c. 166 [8, 9], wherein a physician was held competent to testify as to a nervous condition although not a neurologist.

■■■ The employer then urges the Industrial Commission failed to give due deference to the findings of the referee and "arbitrarily ignored its duty to consider the interest of the claimant witness, his evasiveness on the stand, his prior inconsistent statements and conduct, and the complete improbability of his story." There is no merit to this allegation of error. In Miranda v. American Refrigerator Transit Co.,

Mo.App., 392 S.W.2d 413, this court specifically held that the finding of the referee, while important and to be considered together with all the facts and circumstances in the case, is not binding or conclusive upon the Commission or upon this court. See Miranda v. American Refrigerator Transit Co., supra, l.c. 419, and cases there cited. In addition, there is no evidence in the record to support the contention the Industrial Commission "arbitrarily ignored" claimant's alleged evasiveness, inconsistencies, or the "improbability of his story". To the contrary, the record indicates the Industrial Commission did consider such matters but found in favor of claimant in spite of them. That it did so is the employer's real complaint as shown by the employer's argument as to this allegation of error. Therein it states: "In this case the credibility of the claimant was the sole issue in the case." The word "sole" is printed in heavy black type. It also states: "There is nothing whatsoever in this case except the credibility of the claimant." We cannot interfere with the decision of the Industrial Commission upon such matters.

The employer advances two arguments in support of its contention the award of the Industrial Commission was against the overwhelming weight of the evidence. First, it cites and relies upon Miranda v. American Refrigerator Transit Co., supra. The employer contends: "The action of the Commission here is wholly inconsistent with the rule of decision in the Miranda Case. It amounts to the application of one rule in one case and a different rule in another, which in turn amounts to discrimination and partiality."

■■■ The employer misconstrues our decision in Miranda. That case does not attempt to establish any rule requiring the Industrial Commission or its referee to deny a claim for compensation when discrepancies appear in the claimant's case. To the contrary, Miranda is but another decision wherein we found the Industrial Commission could reasonably have made the findings and reached the result it did. The de-

cision in Miranda and in the instant case depends in the main upon whether or not the Industrial Commission believes claimant's evidence. In Miranda the Commission reached its result and made its findings because it did not believe claimant's evidence due to certain discrepancies in that evidence. All this court held was that the discrepancies constituted reasonable grounds to support the finding of the Industrial Commission. There is nothing in the Miranda case that would require the Industrial Commission to disbelieve the claimant merely because the discrepancies existed. The Industrial Commission could still have believed the claimant in Miranda and had it done so we would have been powerless to hold their finding unsupported by the evidence absent a finding those discrepancies so destroyed claimant's case as to prevent evidence offered in his behalf having probative value thus constituting the finding and award as one against the overwhelming weight of the evidence. The discrepancies or contradictions merely raise an issue of fact and we cannot substitute our judgment for that of the Industrial Commission as to such issues. In the instant case the situation is reversed. Although discrepancies or contradictions exist in claimant's case the Industrial Commission believed him. There is no conflict between the decision reached by the Industrial Commission in the instant appeal and the decision of this court in Miranda.

Neither can we agree the award of the Industrial Commission was against the overwhelming weight of the evidence and could not reasonably have been made on the whole record. The Industrial Commission found the accident occurred on September 23rd when the claimant slipped on a chunk of liver causing him to fall with the resultant blow from the wagon he was pulling following immediately thereafter. The claimant testified the accident occurred "about" September 24, 1963, and the history given by Dr. Morgan was "Low back pain in left sciatic since September of 1963, * * *." When that evidence is read in conjunction with the notation of October 1st on the dispensary record to the effect that he then stated his pain first started September 23rd, the Commission had reasonable grounds to support its finding. There is no question but the claimant testified as to slipping and the blow from the wagon. Since the Commission believed claimant this constitutes grounds to support its finding the accident occurred in that manner. The Commission also found that it was reasonable and probable the claimant sustained injuries to his back as a direct result of this accident. We have already held herein the testimony given by claimant's medical expert was sufficient to sustain this finding of the Commission.

That portion of the employer's brief containing the argument directed to the allegation the award was against the overwhelming weight of the evidence treads upon dangerous ground. The argument contained in the brief devotes itself to a recitation of the rules of review (citing Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 1.c. 62) and extensive quotations from the Miranda case. It is well settled a matter not argued in the brief is regarded as abandoned even though it may be stated in the "Points Relied On" portion of the brief. Hutchinson v. Steinke, Mo.App., 353 S.W. 2d 137. There are, however, two sentences in the argument directed to this allegation of error stating the award was contrary to the overwhelming weight of the evidence and could not reasonably have been made upon the whole record. In addition, statements appear in those portions of the brief containing argument directed to the other allegations of error which, when we give the brief a most liberal reading, are sufficient to present the contention the claimant was so evasive, conducted himself in a manner so inconsistent with his claim for compensation, and gave testimony so improbable that his evidence is without probative value and for this reason the award was against the overwhelming weight of the evidence.

It will serve no useful purpose to set out in detail the alleged discrepancies in the claimant's evidence. The employer contends claimant was not a "straight-forward and positive witness, but an evasive one" and contrasted the memory he exhibited as to facts surrounding his visit to the dispensary with the weakness his memory bore as to many treatments for his back over the years prior to that time. The employer states claimant answered over sixty questions with "I don't remember". The employer's contention is argumentative only and constitutes an insufficient reason for holding claimant's evidence without probative value. The same is true of claimant's repeated answer "I don't remember". Regardless of what claimant did not remember the employer concedes he did remember enough to make his case if he is to be believed. Other examples of alleged evasiveness and inconsistencies in claimant's testimony which are really argumentative matters are employer's contention claimant's dispensary records contained descriptions of many injuries he suffered occurring as far back as 1953 and if claimant had suffered this accident the event would have been made a part of the dispensary record. To the same effect is the employer's contention it is wholly inconceivable the claimant would have never mentioned his accident to at least one of the five doctors or several nurses who examined or treated him, or while he was in the two hospitals in which he was treated, or to his foreman. The claimant testified he told Nurse Scott he had a fall and hurt his back. He further testified he attempted to recite the cause of his pain to Dr. Younge but that Dr. Younge wouldn't listen and that he never recited the cause of his accident to anyone else because they didn't ask him.

As an example of inconsistent statements the employer cites the difference in dates as to when this accident occurred as given by the claimant prior to trial and upon trial. The employer overlooks the claimant's testimony and evidence given at the trial sufficient to justify the Industrial Commission fixing the accident as occurring on September 23, 1963 as we have held earlier in this opinion. As another example of an inconsistent statement the employer refers to the notation by Dr. Younge on the hospital record of October 8, 1963 and the notations as to claimant's history as taken by Dr. Morgan, the intern, and the resident at the hospital where claimant was treated. These were to the effect that claimant's back was injured while he was "lifting" at work. The employer also refers to claimant's action in going to see Dr. Younge in October and in March as inconsistent conduct on the grounds that the claimant was well versed in workmen's compensation law and had previously obtained Company-provided medical assistance for certain accidents. The "inconsistencies" upon which the employer relies do not have the strength it seeks to impart to them as they do not directly negate the fact this accident did cause claimant's injury. They do raise an inference that it did not, but it was up to the Industrial Commission to decide whether or not it would draw that inference or disregard it and we cannot interfere with their decision on such matters.

■ The situation here presented is analogous to that presented in Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, l.c. 647, with regard to conflicting and contradictory statements of a witness. In Adelsberger it was held that if the conflicting and contradictory statements are reasonably explained or if there are other facts and circumstances tending to show which story of the witness is true, and if from a fair consideration of all these other facts and circumstances and the contradictory or inconsistent testimony of the witness a jury could reasonably determine what should be accepted as true, then the credibility of that witness and the weight to be given his testimony are questions for the jury. In workmen's compensation proceedings the Industrial Commission takes the place of the jury as the triers of the

facts. We think the alleged inconsistencies and contradictions in the claimant's testimony were either explained by other testimony given by the claimant or there were other facts and circumstances in the case from which the Industrial Commission could reasonably determine what the true state of facts was and believe the claimant on that basis. Adelsberger v. Sheehy, supra. It is well settled the Industrial Commission has the right and duty to pass upon claimant's credibility as a witness and can disregard and disbelieve evidence in his favor or that against him which is not credible in its judgment even though there is no evidence to contradict or impeach the evidence believed or disbelieved. Long v. Mississippi Lime Co. of Mo., Mo.App., 257 S.W.2d 167; Brown v. Krey Packing Co., Mo.App., 271 S.W.2d 234. In the instant appeal regardless of how persuasive this court may deem the employer's evidence the Industrial Commission is not required to believe even that portion which is uncontradicted and undisputed and could if it so desired believe the claimant's evience although it was contradicted and disputed.

Upon a reading of the entire record in this case and a careful consideration of all the evidence we hold claimant's evidence had probative value and that the inconsistencies and contradictions went only to the weight to be given to that evidence and the credibility to be accorded the claimant. Under such circumstances we cannot hold the award of the Commission was against the overwhelming weight of the evidence and could not have reasonably been made on the whole record.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and DOUGLAS W. GREENE, Special Judge., concurs.