James H. GRIFFIN, Respondent,

v.

EVANS ELECTRICAL CONSTRUCTION COMPANY and Royal Indemnity Company, Appellants.

No. 27641.

Missouri Court of Appeals, Kansas City District.

Oct. 6, 1975.

Motion for Rehearing and/or Transfer Denied Nov. 3, 1975.

Harold J. Maddox, Kansas City, for appellants.

Dean Frazier, Kansas City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

This is an appeal in a claim for Workmen's Compensation. The Referee, Division of Workmen's Compensation, before whom the original claim was heard, made an award in favor of the claimant (respondent here) for necessary medical aid and for 8³/₇ths weeks temporary total disability, in a total amount of $2,648.85. Upon review, this award was affirmed by the Labor and

Industrial Relations Commission (hereinafter referred to as "Commission"), and the employer and insurer (appellants here) appealed to the Circuit Court of Jackson County, Missouri, which court sustained the findings of the Commission and affirmed its award. This appeal followed in due course.

The appellants urge that the Circuit Court erred in affirming the award because it was not based on competent and substantial evidence and was contrary to the overwhelming weight of the evidence and that, therefore, the Commission acted without or in excess of its powers. Section 287.490(1) RSMo 1969.

In support of this position, the appellants urge four propositions, which, while somewhat overlapping and repetitious, may be summarized as follows:

1. The Commission failed to consider prior unexplained, inconsistent statements of the respondent touching on the issue of accident.

2. The Commission failed to consider competent and substantial evidence that respondent was suffering from the physical conditions for which he was claiming compensation prior to the alleged accident, and its finding that respondent suffered a subarachnoid hemorrhage due to strain is not supported by competent and substantial evidence.

3. That the Commission based its award on the causal connection testimony of a non-expert medical witness (Dr. Spurny), who merely gave lip service to a hypothesis as to the elements of accident and causal connection of a non-medical expert.

4. That there was no competent or substantial evidence upon which to base the finding of causal connection; that the so-called Seven Day Rule (Section 287.210(3) RSMo 1969) was not complied with; that Dr. Spurny is neither competent nor qualified to express an opinion in the field of neurology; and because there was no proof that the respondent suffered a subarachnoid hemorrhage or that his other possible conditions were the result of his employment.

It is necessary that the well-defined scope of and limits to appellate review in cases of this nature be recognized at the outset.

Section 287.490(1) RSMo 1969, inter alia, provides:

"* * * The court, on appeal shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

1. That the commission acted without or in excess of its powers;

2. That the award was procured by fraud;

3. That the facts found by the commission do not support the award;

4. That there was not sufficient competent evidence in the record to warrant the making of the award.

* * * *"

It is firmly established that the scope of appellate review is limited to these four grounds specified in the statute. *Biggs v. Loida,* 488 S.W.2d 932, 933[2] (Mo.App. 1972).

However, further decisional guidelines have been set down with reference to these statutory grounds. In *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625, 627–628[5] (Mo.1969), the court said:

"The judicial review of a workmen's compensation case is of the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission. The function of the court is to determine whether the Commission's findings, if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence. * * *"

See also: *Brown v. Anthony Manufacturing Company,* 311 S.W.2d 23, 27[1, 2] (Mo. banc 1958); *Francis v. Sam Miller Motors,* 282 S.W.2d 5, 11–12[1] (Mo.1955). "Substantial evidence", as used in these criterion, means

competent evidence, which, if believed would have a probative force upon the issues. *State ex rel. Rice v. Public Service Commission,* 359 Mo. 109, 220 S.W.2d 61, 64[3] (Mo. banc 1949). The credibility of the witnesses and the weight to be given to their testimony falls within the function of the Referee, in the first instance, and of the Commission, and this applies to the credibility of and the weight to be given to the testimony of the claimant. *Shepard v. Robinson,* 451 S.W.2d 329, 335[6] (Mo.1970); *Roux v. Dugal's Big Star Food Store,* 510 S.W.2d 810, 812[6] (Mo.App.1974).

The evidence in this record, when so viewed, establishes the following facts:

The respondent-claimant, while in the employ of the Evans Electrical Construction Company, was working as an electrician at Marion Laboratories in Jackson County, Missouri on March 16, 1972. At approximately 2:40 p. m. on that date, Griffin and another employee were instructed by their supervisor to obtain a wire-pulling machine weighing approximately 60 to 70 pounds from the basement of the building and to bring it to the first floor to be used in pulling some wire through a pipe conduit. The other employee did not respond to this order, and, while carrying this machine to the first floor by himself, Griffin claims to have been injured. He testified that he carried the machine at waist level up one-half of the first flight of stairs from the basement to a landing, where he encountered two workmen descending with a piece of pipe on their shoulders. The steps were approximately three feet wide and in order for him to clear the stairs for free passage of the other workmen, he "twisted and raised that machine to get it above the handrail next to the wall." He stated that he "seemed to have lost his grip or the machine slipped out of my hand or something. Anyway, it slipped, bounced off the handrail and I bent over and grabbed it before it could hit the floor and brought it back to a position where I could carry it the rest of the way." When he got to the location where the machine was to be used,

he was "totally exhausted" and "physically felt that I couldn't go any further." It should be noted that appellants make no claim that the occurrence as described in the claimant's testimonial account would not constitute an "abnormal and unusual strain" and thus a compensable accident, even though unaccompanied by a slip or fall, since *Crow v. Missouri Implement Tractor Company,* 307 S.W.2d 401, 405[1] (Mo. banc 1957).

The alleged inconsistent and unexplained statements of claimant as to the issue of accident which the appellants charge the Commission failed to consider are contained in a statement taken by a claims adjuster for the insurer dated May 9, 1972, and two reports by Dr. Spurny, claimant's attending physician.

The statement to the insurer was narrative in form and in the handwriting of the adjuster, signed by the claimant. A careful comparison of the facts therein related with the claimant's testimony discloses at most elements of inconsequential inconsistency. The written statement contains the account, "I really don't remember feeling any strain in my back. I did not trip, fall or slip or stop. It was just a steady walk with the machine." In his hearing testimony, he stated the *machine* slipped and he grabbed it as hereinbefore noted.

In the reports of Dr. Spurny, he states that the claimant told him that he was "lifting a heavy load of work" and, again, that he was "carrying a wire pulling machine up some steps and lost his balance and almost fell, which caused him to put forth extra effort while in a strained and twisted position to right himself and to hold on to the heavy machine."

■ A fair reading of these statements as to the occurrence clearly discloses that they are not so diametrically opposed or so self-contradictory as to rob the claimant's testimony of probative value or evidentiary force, as asserted by the appellants. Any slight inconsistencies that could be gleaned

or laboriously extracted from such comparison, while admissible as impeachment, would, at most, affect the claimant's credibility, which was for the trier of the facts.

In the case of *Cain v. Orscheln Bros. Truck Lines, Inc.,* 450 S.W.2d 474 (Mo.App. 1970), a case remarkably similar factually to the case at bar, this court held that even if the claimant is the only witness as to the accident and has made prior out-of-court inconsistent statements, such statements did not destroy the prima facie probative effect of his in-court testimony, and such testimony, if believed, constituted substantial evidence of the fact of the accident.

In the case of *Wigham v. Ben Franklin Division of City Products Corporation,* 459 S.W.2d 32, 39[3] (Mo.App.1970), this court followed the rule in *Crow* and subsequent decisions, that unusual and abnormal strain, even though unaccompanied by a slip or fall, constitutes a compensable accident, and again exhaustively explored the rules applicable to inconsistent extrajudicial statements as declared in *Cain.*

■ Counsel for appellants (who was also counsel for appellants in *Cain* and *Wigham*) urges that the rules therein stated now be discarded. This court declines that invitation, but to the contrary, reaffirms those decisions as binding here, and holds that the finding of the Commission, that the "wire-pulling machine slipped from claimant's grasp, and while grabbing it to keep it from striking the floor, he was in an unusual and awkward position which caused an abnormal and unusual strain" was supported by competent and substantial evidence. Appellants' first point is ruled against them.

Further facts necessary for a determination of appellants' remaining points may be thus summarized:

Within a short time after the incidents above related, the claimant noticed that his speech had become slurred and that he was losing motor control on the right side of his face. The claimant advised his foreman, Garden, of his difficulties, and the foreman testified that the claimant also complained of a "kink" or "spasm" in his neck, but told him it and his other difficulties would probably "go away in a little bit", or some similar statement. The claimant testified that while driving home from work, he experienced a loss of coordination of his right arm and hand, which affected his ability to drive. He also experienced difficulty in swallowing and writing.

Upon arriving at his home, he managed to communicate his difficulties to his mother, with whom he lived; she called Dr. Spurny and then drove the claimant to Menorah Hospital. At the hospital emergency room, the mother did the talking and claimant was examined by an intern. Upon the arrival of Dr. Spurny, he was again examined, a spinal tap was performed, and he was admitted as an inpatient at the hospital. The claimant remained in the hospital from March 16, 1972 until March 31, 1972, under the care of Dr. Spurny, during which time a neurologist was called in consultation and various additional spinal taps and other tests were performed. Upon his release from the hospital, he remained at home in bed for approximately two weeks, and on May 15, 1972, Dr. Spurny released him to return to his regular work.

■ Dr. Spurny's diagnosis was that the claimant's injury was an acute, small traumatic subarachnoid hemorrhage, which he stated was caused, in his opinion, with reasonable medical certainty, by the strain and incident with the wire-puller, as related in claimant's testimony and hypothesized to the Doctor. He stated that the strain would result in an increased pulse rate and an elevation of the blood pressure, which, in turn, would increase the stress to the walls of the arteries and the surrounding blood vessels. This, in his opinion, caused a rupture or hemorrhage to a weak blood vessel at the base of claimant's brain. It should be here noted that the claimant had been a patient of Dr. Spurny's since 1961.

The claimant testified that he had never experienced nor suffered from the condi-

tions and symptoms arising on March 16, 1972, before that date, and his prior health had been good. These facts were included in the factual hypothesis upon which the Spurny opinion was predicated. However, the appellants assert that the testimony of foreman Garden, that claimant stated to him that his difficulties would "go away" (which statement claimant denied having made) established that he had been suffering from this condition prior to March 16, 1972, and this destroyed the claimant's testimony of prior good health, and accordingly, the factual hypothesis of prior good health addressed by counsel to Dr. Spurny was improper. This strained and distorted construction of the record is rejected.

Appellants attack the procedures with reference to the hypothetical question and the opinion elicited from Dr. Spurny based thereon because, as their argument is understood, the question was based upon facts given to the Doctor by his patient, and not upon facts within the Doctor's personal knowledge, and therefore violated the hearsay rule. The rule prohibiting an hypothesis based upon hearsay has no application here. The proper and approved method to establish facts forming an hypothesis for an expert medical opinion is to elicit competent evidence of those facts in the record independent of the history which may have been given the doctor in the privacy of an examination or treatment. *Davies v. Carter Carburetor, Division ACF Industries, Incorporated,* 429 S.W.2d 738, 750–751[15, 16] (Mo.1968). All of the facts hypothesized by claimant's counsel to Dr. Spurny had, in fact, been established in the record by the sworn testimony of the claimant; counsel specifically warned the Doctor to eliminate from his consideration any history given him by claimant; and, counsel specifically stated that he was basing the hypothesis upon the "testimony here by Mr. Griffin". The hypothetical question was supported by the record and Dr. Spurny's opinion was properly received.

The principal thrust of appellants' attack upon the Spurny opinion is that he lacked the necessary qualifications to give it in the area of neurological medicine. This proposition is likewise rejected.

Dr. Spurny at the time of the hearing had specialized in the field of internal medicine and cardiology for a period of 15 years; he had graduated in medicine at the University of Vienna in 1951, and from the University of Arkansas in 1956; he was a member of the staff at Menorah Hospital and Research Medical Center at Kansas City, an Associate Professor of clinical medicine at the University of Kansas Medical Center, and a consultant in this field at the medical school of the University of Missouri at Kansas City; he was certified by the American Board of Internal Medicine and the American Board of Cardiology; and, was a Fellow in the American College of Physicians. While candidly admitting that those physicians who specialize entirely in neurology are perhaps more knowledgeable in that field, Dr. Spurny further stated that Board certification in the field of internal medicine includes a section on neurology, and that the field of neurology cannot be separated from the area of general internal medicine. It has long been the rule in Missouri that the extent of training, experience and competence of a medical expert in the field in which he testifies goes to the weight to be given to and not the admissibility of his testimony in that area, and thus becomes a matter for the trier of the facts. *Sanguinett v. May Department Stores Co.,* 228 Mo.App. 1161, 65 S.W.2d 162, 166[8, 9] (1933); *Pate v. St. Louis Independent Packing Company, Division of Swift and Company,* 428 S.W.2d 744, 750[4] (Mo.App.1968); *Swope v. Printz,* 468 S.W.2d 34, 40[10] (Mo. 1971); and cases cited therein.

The appellants offered the testimony of Dr. Whittaker, who had examined the claimant on their behalf on August 23, 1973, and whose qualifications as a specialist in neurological medicine was not challenged. The course of his testimony established that in his professional opinion, the claimant did not suffer from an accident-induced subara-

chnoid hemorrhage on March 16, 1972, but as his first diagnostic choice he stated "viral encephalitis" and as his second, "an unexplained stroke". The record thus discloses that his opinion was different and, indeed, in direct and irreconcilable conflict with that of Dr. Spurny.

The Commission accepted the opinion of Dr. Spurny, which was supported by his admissible and competent evidence. Where, as here, the expert medical evidence and opinion conflict, it is the prerogative of the trier of the facts to accept one or the other version, and such acceptance by the Commission will not be set aside under appellate scrutiny unless such finding is against the overwhelming weight of the evidence. *Stegall v. St. Joseph Lead Company,* 465 S.W.2d 855, 861[3] (Mo.App.1971); *Davidson v. Scullin Steel Company,* 408 S.W.2d 171, 175[1] (Mo.App.1966).

Under their third point, appellants complain that the Referee improperly excluded their Exhibit No. 10. The background of this trial incident occurred during the cross-examination of Dr. Spurny. Counsel for appellants asked for and was given permission to examine the Doctor's personal office file which the Doctor had apparently brought with him to the hearing. A recess was taken for that purpose. Immediately following the recess, counsel had Exhibit No. 10 marked. It was a typed, undated, unsigned memorandum, purportedly from claimant's counsel to Dr. Spurny, calling attention to the facts of the Griffin "episode" on the job and the necessity of establishing a causal medical connection. The Doctor could not identify the note, did not recall receiving it, didn't know if he had ever seen it before, and stated it meant nothing to him. Further, counsel for appellants stated during this examination "I didn't find that in your file, Doctor" and "I didn't find No. 10 in your file." There was no further identification of the exhibit nor explanation of its source nor showing of its relevancy. It was therefore hearsay and properly excluded. The appellants' second and third points are ruled against them.

All of the matters raised by appellants in the fourth point, except one, have heretofore been covered in this opinion and ruled adversely to appellants. In this sole remaining point, the appellants assert a violation of Section 287.210(3) RSMo 1969, the so-called "Seven Day Rule", with reference to the exchange of medical reports. In substance, this statute provides that when a compensation claim is set for hearing, the parties or their attorneys shall exchange all medical reports of both treating and examining doctors, "to the end that the parties may be commonly informed of all medical findings and opinions." It is further provided that such exchange shall be made at least seven days before the date set for the hearing, and that failure to comply may be sufficient grounds for a continuance, and that in the event of failure or refusal to furnish the reports, and upon objection, the physician shall not be permitted to testify at the hearing.

Section 287.210(5) RSMo 1969 provides that the above requirements apply to both the printed medical forms authorized by the Commission or any complete medical report. The section further provides:

" * * * the term 'complete medical report' means the report of a physician giving patient's history, complaints, details of the findings of any and all laboratory, X-ray and all other technical examinations, diagnosis, prognosis, nature of disability, if any, *and an estimate of the percentage of permanent partial disability, if any.*" (Emphasis supplied)

Section 287.210(3) and (5) is a discovery tool, the purpose of which is to insure that all parties are commonly informed of all medical findings and opinions. *Oder v. St. Joe Minerals Corp.,* 484 S.W.2d 487, 494[7, 8] (Mo.App.1972).

The hearing before the Referee in this case was held March 20 and March 21, 1974. So far as this record discloses, Dr. Spurny made reports on the "Standard Form For

Surgeons Report" dated May 6, 1972 and May 25, 1972, and a narrative or "complete medical report" to claimant's counsel dated August 1, 1972. Appellants do not suggest that they did not receive copies of these reports as provided by Section 287.210(3) RSMo 1969, or that claimant was supplied with any additional reports which they did not receive. Consequently, they are not contending that they were not "commonly informed".

The thrust of appellants' argument appears to be that in none of Dr. Spurny's reports did he expressly state an opinion that claimant was *temporarily totally disabled,* but only expressed such opinion in his hearing testimony, which they did not "receive" seven days before the hearing. Upon this premise, they assert that the Commission erred in accepting that testimony and basing an award thereon.

This tortured and tenuous argument falls of its own weight, in light of the statute involved and the facts in this case. In the first place, Section 287.210(5) does not require that the "complete medical report" shall contain any estimate of "temporary total disability" but applies the requirement only as to "permanent partial disability". Dr. Spurny did not express in writing or in his testimony any opinion as to permanent disability and, indeed, disclaimed any ability to make any rating on that basis. In this connection, Dr. Whittaker, the appellants' medical expert, facetiously (it would seem) expressed his opinion of the claimant's permanent partial disability, which he did not ascribe to any accident, as "½ of 1%" of the body as a whole. This constituted the only evidence of permanency in the case and, of course, no award was made based upon any permanent disability.

Further, appellants' argument is without merit because Dr. Spurny did, in fact, state an opinion as to the claimant's temporary total disability in the report of May 25, 1972, although that term was not specifically used. In this form report, the following appears:

"20. Patient was able to resume regular work on: *May 15, 1972*"

thus fixing the period of his temporary total disability from March 16, 1972 to May 15, 1972, which formed the basis for the award. There is no merit in this contention of appellants.

The judgment is affirmed.

All concur.