RHOADS *v.* RHOADS, GDN.

(Decided December 7, 1927.)

*Mr. F. M. Acton,* for plaintiff in error.
*Mr. T. T. Courtwright,* for defendant in error.

HOUCK, J. The errors complained of in this case originated in the common pleas court of Fairfield county, and the cause is in this court on a petition in error and bill of exceptions seeking a reversal.

On January 13, 1925, William E. Rhoads, aged about 80 years, fell on the ice in Lancaster, Ohio, and for a time following the date of the accident was under the care of a physician, in the home of his daughter, in Bremen, Ohio.

On March 9, 1925, and before said William E. Rhoads had fully recovered from the effects, of his accident, the probate court of Fairfield county, on application of Tunis Rhoads, his son, found said William E. Rhoads to be an incompetent person and appointed his son, Tunis Rhoads, as his guardian.

On January 29, 1927, William E. Rhoads filed in the probate court of said county his application to terminate said guardianship, averring and setting forth in the same the following:

"Said letters of guardianship were improperly issued to Tunis Rhoads for the reason that the petitioner at the time of the application for said guardianship and hearing was sick and unable to appear in his behalf and advise the Court of the facts concerning the mental and physical condition of the petitioner; that William E. Rhoads, the petitioner, was not at the time of said finding and appointment and is not now an incompetent person."

On the hearing of the application aforesaid on February 7, 1927, the probate court refused to terminate the guardianship of William E. Rhoads, and thereupon an appeal was taken to the common pleas court of Fairfield county. On July 16, 1927, the common pleas court heard said case on the evidence and refused to terminate the guardianship, and on July 20, 1927, a motion for a new trial was overruled, to which the plaintiff excepted. On August 27, 1927, a petition in error was filed in this court, and on September 1, 1927, the bill of exceptions was filed.

We have read with much care the testimony as contained in the bill of exceptions and have given it very careful consideration. The question to be determined in this court is whether or not William E. Rhoads is mentally incompetent, and, by reason thereof, disqualified from having the possession and control of his property, which consists of a residence property of the value of about $4,000 and personal property, in the form of securities, etc., of the value

of about $3,000, making a total estate in the sum of $7,000.

In this court the cause was ably argued by learned counsel. But, in their enthusiasm, they made some observations and referred to certain facts wholly within their own knowledge which do not appear in the record, which, of course, were not considered by the court in arriving at its conclusion. In our finding and judgment in this case we have been governed wholly and entirely upon the facts as presented by the evidence as it appears in the bill of exceptions —nothing more and nothing less. The writer of this opinion desires to say that the members of this court have relied entirely upon the record before it, and where it speaks we have spoken, and where it is silent we have been silent.

In the examination of the witnesses in the court below counsel upon both sides made the following inquiry of quite a number of the witnesses: "In your judgment what would you say as to William E. Rhoads being a competent or incompetent person?" This was a legal question to be determined by the court, and not by any of the witnesses. This same inquiry was made of the medical witnesses, none of whom with possibly one exception, and that one only partially, qualified as an expert witness.

Therefore, all the witnesses offered on both sides for plaintiff and defendant may be classed in the category of nonexpert or lay witnesses.

The rule is so well settled in Ohio that a nonexpert or lay witness should not be permitted to testify or give his opinion as to the mentality or lack of mentality of a ward until he shall have testified to facts within his knowledge, tending at least in some de-

gree to indicate mental capacity or the lack of same, that it seems almost out of place to refer to it. Such witness should be confined as a basis for his opinion not only to the facts and circumstances within his knowledge, but to the facts and circumstances which he has delineated to the court or jury to whom he is giving such testimony. It will be observed that in no other way can the court or jury properly determine what weight shall be given to the opinion of such nonexpert witness.

Witnesses were permitted to express an opinion when they had not testified to any facts within their knowledge tending to indicate mental weakness, or otherwise, and no witness was asked to base his opinion wholly upon the facts and circumstances concerning the ward which he had detailed to the court.

We challenge any one who reads the testimony given by the witnesses in the case now before us to point to a single witness who testified of any act either of omission or commission that would either directly or indirectly lead one to believe that William E. Rhoads was not able and capable of caring for his property. No witness testified to any instance where William E. Rhoads had made a bad deal, lost a dollar or had failed or neglected in any way to properly conserve and take care of his property and estate. This is true during the entire life of the ward down to the present time.

We read the testimony in chief as well as the cross-examination of William E. Rhoads, and we have no hesitancy in saying that he was clear, definite, and certain in all his statements, and that his testimony showed a mind as clear as that of any

other ordinary person who possesses the same opportunities and surroundings as this witness. He testified to his age, the day, month, and year of his birth. He gave with clearness the names of all of his children, and where they reside. He gave in detail where he had resided in the different periods of his life and very accurately described the property now in the possession of his guardian and placed a value upon it. This same demeanor and alertness William E. Rhoads manifested under the cross-examination of learned counsel, and, in fact, all his testimony, which speaks for itself, and is to us of a convincing character and nature, together with all of the other competent testimony offered in the trial, firmly convince us that William E. Rhoads is mentally qualified and fully able to control, possess, and manage his little estate.

One of the witnesses for defendant testified that the ward visited the probate courtroom on a number of occasions, and that he seemed to be disturbed in mind, and talked about the removal of his guardian, and that he wanted to get possession of his property. One witness testified that on one occasion he had entered her house, instead of going into the home of his daughter, whose home was adjacent to that of the witness. This same witness testified that some one had told her that the ward had claimed to have put some chickens in a certain coop, or inclosure, when, in fact, that person told her, he had put the chickens in the coop or inclosure himself. Another witness testified that on one occasion the ward had charged her or some one else with taking some shirts that belonged to him. Tunis, the guardian, testified that his father accused him of taking a re-

volver out of his house, which he admitted he took after the guardianship, but says he did it as he thought for the protection of his father. These are the outstanding related incidents as to acts and conduct on the part of the ward which the defendant claims show such lack of mental capacity as to warrant the continuation of the guardianship in question.

It certainly cannot be expected that a man advanced in years will retain the same mental powers at 80 that he possessed in his younger years. It occurs to us that that can hardly be expected, and we are quite sure that the law does not contemplate such a condition.

In passing we need but suggest that a person's memory may be impaired, his body may become weak and feeble by reason of age or other infirmities. He may occasionally at times ask questions that may seem out of place, or he may repeat questions and conversations, and may be forgetful at times, yet it cannot be said that such are the constituent elements of and the only test of mentality, and that under such circumstances one is unable to care for his estate and property interests, or that by reason of same he is mentally incapacitated for caring for and preserving an estate of $7,000.

It is to be noted that this suit is brought under favor of Section 11010 of the General Code of Ohio, which section reads:

"When the probate judge is satisfied that an idiot, imbecile, or lunatic, or an incompetent by reason of advanced age or mental or physical disability or infirmity, or a person as to whom guardianship has been granted as such, is restored to reason, or

that letters of guardianship have been improperly issued, he shall make an entry upon the journal that such guardianship terminate. Thereupon it shall cease, and the accounts of the guardian be settled by the court.''

The question for final determination by this court is whether or not, under the facts as contained in the record, and according to the law pertaining to same, William E. Rhoads is mentally competent and qualified to care for, preserve, and possess the estate belonging to him, now in the hands of his guardian.

This court is unanimous in its judgment and finding, basing same upon the proven facts in the bill of exceptions, that there is no legal evidence warranting the finding of the court below that William E. Rhoads is mentally incompetent and unable to care for his estate. It may not be out of place to advise counsel as to what we find and hold constitutes legal evidence. In our opinion it is not such evidence as merely raises a suspicion and leaves the matter in question to conjecture. It is such evidence as, taking a just and reasonable view of it, and considering all the facts, whether they be many or few, will warrant the judgment entered.

We are convinced after carefully reading the opinion of Judge Robinson in the case of *Schafer* v. *Haller,* 108 Ohio St., 322, 140 N. E., 517, 30 A. L. R., 1378, and applying the reasoning and rules of law therein to the facts in the present case, that there is prejudicial error in the record before us which invades the legal rights of the plaintiff in error, and that the judgment of the court below should be reversed.

And the court coming now to enter the judgment in this case that the lower court should have entered holds that the guardianship of William E. Rhoads should be and is now terminated and held for naught; that said ward be restored to all his property and other rights in the premises, and is now given full possession and control of all his property of every kind and description.

It is further ordered that this cause be remanded to the probate court of Fairfield county, Ohio, with instructions to carry out the judgment of this court.

*Judgment reversed and judgment for plaintiff in error.*

SHIELDS and LEMERT, JJ., concur.