PARKER v. PARKER.

5-2018                                    331 S. W. 2d 694

Opinion delivered February 8, 1960.

*J. H. Evans* and *Robert J. White,* for appellant.

*Richard Mobley,* for appellee.

ED. F. McFADDIN, Associate Justice. The question here is what is best for the welfare of Mrs. Laura E. Parker, a lady past 83 years of age, and the widow of John M. Parker, a long-time lawyer of Arkansas. She has lived in Dardanelle many years and she has both real and personal property: her home, a number of rent houses, several farms, and both checking accounts and savings accounts.

On September 30, 1959 Mrs. Laura Parker accompanied her son, to the office of the Probate Judge; and her son was duly appointed[1] guardian of her estate. The son, Parker Parker, made a surety bond, entered into the discharge of his duties as such guardian of the estate, and filed his inventory on December 5, 1957, showing fourteen items of realty valued at a total of $20,000.00 and nine items of personalty valued at a total of $9,836.88. The only liability was a note to a bank for $2,586.70.

Mrs. Laura E. Parker has three children, being two daughters and a son: Mrs. Johnnie Parker Walrath,

---

[1] The probate order contained these factual recitals: "On this the 30th day of September 1957, the petition of Mrs. Laura E. Parker and Parker Parker requesting that Parker Parker be appointed guardian of the estate only of Mrs. Laura E. Parker, was held in Booneville, Arkansas, Parker Parker appearing as attorney for Mrs. Laura E. Parker and the Court having examined sworn statement of Dr. Lewis A. Webb stating that Mrs. Parker is not physically able to manage her real and personal property and that a guardian should be appointed by this Court to manage said property.

"It was submitted to the Court also a sworn statement by Mrs. Laura E. Parker which is attached to the petition.

"Testimony was taken of Mrs. Laura E. Parker, Parker Parker, Mrs. Mima Buford and Sam Turner in support of said petition.

"The Court finds that Mrs. Laura E. Parker, age 83, is suffering from hypertension, arteriosclerosis and cardio-vascular disease which prevents her from being able to personally manage her farm and city property.

"The Court further heard evidence of dissipation of assets of the said Mrs. Laura E. Parker and other evidence from which the Court finds that Mrs. Parker is not physically able to see after her large number of rent houses and farm property.

"The Court finds that Parker Parker deals in real estate and is quite familiar with his mother's affairs and that he can best conserve her assets."

Mrs. Laura Parker Gray, and Mr. Parker Parker, an attorney. On March 25, 1958 Mrs. Parker, joined with her two daughters as next friends, filed a petition to dissolve the guardianship of her estate on the basis that Mrs. Parker was thoroughly competent to handle her own affairs. Mr. Parker Parker resisted this and filed a counter-petition asking that his guardianship of the estate be extended also to the person of his mother. The Probate Court has been most patient in the entire proceedings. Testimony was taken on four different occasions in 1958: May 7th, October 15th, October 24th, and October 30th. Serious efforts were made to accomplish an agreement between the children so that some disinterested third person or bank could be appointed guardian of the estate; and Mr. Parker even offered to do all the "leg work" if such an arrangement could be accomplished. It was all to no avail. The insistence was that Mrs. Laura Parker should be released from all guardianship.

At the conclusion of the hearings the Probate Court took the case under advisement; and on February 12, 1959 rendered judgment. That judgment (1) refused to discharge Parker Parker as guardian of the estate of his mother; (2) refused to appoint Parker Parker as guardian of the person of his mother; and (3) taxed all costs against Mrs. Johnnie Walrath. From that judgment[2] there is this appeal. The appellant in this

---

[2] The judgment is concise, and we copy its findings: "On this 12th day of February 1959 comes on for final determination the matter of two petitions pending in this cause, one for the termination of the guardianship and the other to extend the guardianship to include a guardianship of the person of Mrs. Laura E. Parker. The petitioners asking termination of guardianship appear by their attorneys, Robert J. White and J. H. Evans. The Guardian appears in person and by his attorney, Richard Mobley. Testimony has been taken at various times and the matters taken under advisement and the entire matter on the two petitions now comes on for final determination.

"The Court, being advised in the premises finds that on September 30, 1957 this court appointed a Guardian for the estate of Mrs. Laura E. Parker and that such proceeding was valid in every respect and that there is a need for the continuation of such a guardianship. The Court further finds that at this time the physical needs of Mrs. Laura E. Parker are being taken care of, and that there is no necessity for a Guardian of her person.

"Wherefore, premises considered, it is by the court considered, ordered, adjudged, and decreed that each petition be and the same is here-

Court is Mrs. Laura E. Parker, by her next friend (daughter), Mrs. Johnnie P. Walrath. The appellee is Parker Parker, Guardian. The appellant lists four points, being:

I. The court was without authority to make original appointment for physical disability, and without authority to continue guardianship so appointed.

II. The evidence of incompetency is not sufficient to warrant a guardianship.

III. If a guardianship is justified, then it is to the best interest of the incompetent that an independent, unbiased and unrelated guardian be appointed.

IV. That the costs of these proceedings should be borne by the guardianship estate.

The appellee cross-appeals from the refusal of the Court to extend the guardianship to the person of Mrs. Parker.

## I and II

Points I and II of the direct appeal raise the question of the necessity of any guardianship and the sufficiency of the proof to support the order appointing a guardian. A careful study of the record convinces us that the Probate Court has been entirely correct at all times in appointing a guardian of the estate of Mrs. Laura Parker. It is very apparent that she is dominated by whichever of her children happens to be last with her; and there seems to be a tug-of-war between the children to see who can control Mrs. Parker's property and its ultimate disposition. Serious friction developed between Mr. Parker Parker and his sister, Mrs. Walrath; and all sorts of charges and counter-charges are contained in the record. At the hearings it was shown that instruments had been executed by Mrs. Laura Parker in favor of one or the other of the. daughters. that checks for large amounts had been given; and all

by denied; that the Guardianship of the estate continue as it now exists without any prejudice to the rights of any petitioner seeking other relief or to other pending matters relative to exceptions to current accounts."

this was done by Mrs. Parker while Parker Parker was guardian of her estate.

Appellant says that Mrs. Laura Parker's trouble was physical and not mental, and that guardianship does not extend to cases of physical disability, citing the Committee comment following § 57-601 Ark. Stats. and also our case of *Powers* v. *Chisman,* 217 Ark. 508, 231 S. W. 2d 598. Physical incapacity (old age in the case at bar) has caused the lessening of mental facilities to such an extent that the lady is unable to understand the nature of her property and how to protect it. Our statute, § 57-601 Ark. Stats., says: "All incompetent is any person who is . . . incapable, by reason of . . . senility . . . of managing his property . . ." Senility is defined by Webster's Dictionary as, ". . . old age or its physical and mental infirmities". The statement, "once a man and twice a child", applies to many people who live past four score of years. Dr. Lewis A. Webb gave the statement to the Probate Court at the original hearing that Mrs. Parker was suffering from "hypertensive and arteriosclerotic cardio-vascular disease". Mrs. Laura Parker testified before the Probate Court in the original hearing and also on two of the other hearings as previously mentioned; and the Court had ample opportunity to see that this splendid lady had returned to childhood. So the Probate Court was entirely correct in having a guardian of the estate of Mrs. Laura E. Parker.

## III.

On direct appeal we are asked to have an independent, unbiased, and unrelated person appointed as guardian of the estate. This has given us most serious concern. The same argument was made to the Probate Court; and, as previously mentioned, serious efforts were made to settle the differences on such a basis. But the Probate Court, seeing the parties, reached the conclusion that the present guardianship should be continued just as it is; and we are unable to say from this record that the Probate Court was in error. So we

leave the Guardianship just as the Probate Court left it. The patience and care that the Probate Court gave to this matter convinces us that it would be quite unwise for us to substitute our own opinion for that of the Probate Court on the record before us. And what we are saying in this regard also disposes of the cross-appeal. The Court, in refusing to appoint Parker Parker guardian of the person of his mother, was evidently of the opinion that the two daughters can look after their mother far better than a daughter-in-law or a grand-daughter; and we are unwilling to substitute our opinion for that of the Probate Court on the record now before us. So the case is affirmed on cross-appeal.

## IV.

The fourth point on the direct appeal relates to the matter of the costs of these proceedings. The question is whether the costs should be individually paid by the daughters, or whether the costs of the entire proceedings should be paid from the estate of Mrs. Laura Parker. We reach the conclusion that for the best interest of all parties concerned, the costs of this appeal[3] should be paid from the estate of Mrs. Laura E. Parker. To this extent only do we modify the judgment of the Probate Court. In all other respects the judgment is affirmed.

---

[3] We are not referring to costs in other matters of the estate.