**In the Matter of the alleged Incompetency of Edith ARMSTRONG.**

**No. KCD 29960.**

Missouri Court of Appeals, Kansas City District.

Oct. 30, 1978.

Theodore M. Kranitz, St. Joseph, for appellant.

Alden S. Lance, Savannah, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Edith Armstrong was found to be incompetent and incapable of managing her own affairs by the circuit court of Andrew County following a trial without a jury. Mrs. Armstrong, on this appeal, contends the judgment of incompetency is not based on substantial evidence. Reversed.

Edith Armstrong is a 78 year old widow without children whose husband of 50 years died in April, 1976. In the summer of 1977, Mrs. Armstrong fell and broke her hip. She was taken to Methodist Medical Center in St. Joseph for treatment where she remained at the time of trial in November, 1977. After Mrs. Armstrong broke her hip she conducted her business through a friend, Norman Berry, who would collect Mrs. Armstrong's bills, write checks for their payment, and take the bills and checks to Mrs. Armstrong. When presented with the bills and checks, she would compare them and if all appeared to be in order, she would sign the checks. Mr. Berry had no authority to sign checks on Mrs. Armstrong's account.

This bill paying arrangement worked well, but Mrs. Armstrong's banker became concerned when she made a series of changes as to the joint tenant on her savings account. In June and July of 1977, three different names were added as joint tenants with Mrs. Armstrong to her savings account. When one was added, the prior name was removed. Just four days before the hearing on the petition, the last named joint tenant was removed and a fourth name was added. This series of events seems to have precipitated the filing of the petition alleging incompetency.

The incompetency petition was filed in probate court by Alden Lance, an attorney in Savannah. After a hearing, Mrs. Armstrong was declared incompetent by the probate judge, but on motion of Mrs. Arm-

strong's attorney this judgment was set aside. Subsequently, a motion to disqualify the probate judge was filed and the second hearing was held in circuit court.

Prior to the hearing in circuit court, Lance was joined as a petitioner by P. V. Haenni, presiding judge of the Andrew County Court. The petition stated Mrs. Armstrong was incapable by reason of senility or other incapacity of managing her property and caring for herself. At the hearing in circuit court, petitioners adduced evidence which showed Mrs. Armstrong's age and physical status as heretofore set out and that she was physically unable to leave the hospital, being confined to a wheelchair.

Five lay witnesses testified for petitioners in addition to Dr. Warren Baker, one of her physicians. The last witness was James Pawlowski, a counselor for the Missouri Vocational Rehabilitation Department. The lay witnesses largely testified to Mrs. Armstrong's physical disability. In some instances the witnesses were requested to compare Mrs. Armstrong with other unnamed persons they might have seen who were, in the witness's opinion, incompetent. Based on this comparison they were requested to give an opinion as to Mrs. Armstrong's competency. Some of the witnesses stated under these circumstances they were of the opinion Mrs. Armstrong was incompetent. In the case of one witness, Mrs. Haenni, when asked if she could state any fact on which her conclusion of incompetency was based, stated she could not.

Dr. Baker likewise stated his opinion that Mrs. Armstrong was incompetent and incapable of managing her own affairs. However, the statement of facts on which his opinion was based related principally to her physical disability with some mention of her forgetfulness. Dr. Baker summed up his testimony in response to a question from the court as follows: "Truthfully this lady is not a remarkable patient mentally, actually. She is no worse than many people her age. Most of the time she is fairly clear, but there are times when she doesn't know for sure what the questions are and can't come up with the right answer. I have to feel like she is impaired somewhat mentally." Dr. Baker also stated Mrs. Armstrong and was not suffering from any mental illness, senile sclerosis or senile dementia.

Mr. Pawlowski stated he found no disturbance in Mrs. Armstrong's train of thought. He stated she was able to speak clearly and to communicate. He stated that in laymen's terms she did have some confusion and memory disturbance. He also stated she was not hallucinating and there were no illusions or disturbances in her perception.

The court recessed the hearing and then heard the testimony of Mrs. Armstrong in St. Joseph. In her testimony Mrs. Armstrong proved to be hard of hearing but her answers were clear and appropriate. She knew she had checking and savings accounts, the approximate balance in each, and that she owned a home. She was able to testify as to her marriage, the date of her husband's death and her present status. She also stated no one else had authority to sign checks on her account and detailed the way she paid her bills with the help of Norman Berry. When asked about a transfer of $3,000 from her savings account to the checking account which already had a balance of about $6,000, she stated that after she broke her hip she made the transfer to be sure there was enough in the checking account to pay her medical bills because she did not know how much they would total. When the court inquired as to the number of changes of joint tenants on her savings account, she stated these had been done on her own without the suggestion of anyone else. She stated she had made a will about a year before and understood that by putting a joint tenant on a checking or savings account the people named in the will would not receive that property. She also stated that by the time she was finished there probably would not be too much left anyway. Mrs. Armstrong expressed satisfaction with the way Norman Berry and other close friends, the Rainalters, had been helping her take care of her affairs and stated she did not want that changed.

The court entered judgment finding Mrs. Armstrong to be incapable, by reason of senility, of managing her affairs and caring for herself and appointed a guardian for her person and estate. The court also allowed Mr. Lance $250 for his services.

After a notice of appeal and appeal bond had been filed, the court entered findings of fact. The court found Mrs. Armstrong to be "a very feeble, emaciated, 78 year old widow . . . she cannot walk . . . and falls asleep while under direct examination." The court stated it relied upon her doctor, "who testified she may never walk again, or never be able to live alone, and is not progressing very well in recovering from her broken hip. According to the doctor she is not oriented in time, she is confused, does not always know where she is and 'needs help'." The court further found from Mr. Pawlowski "that the incompetent is not oriented as to time and did not know where she was. Both professional witnesses testified that in their opinion she would not improve and she was incompetent to handle her affairs." It should be noted there is no mention in the transcript that Mrs. Armstrong fell asleep during direct examination.

Mrs. Armstrong presents a number of arguments as to why the judgment should be reversed but because the judgment is not supported by substantial evidence only the sufficiency of the evidence need be discussed.

▮ The test by which the evidence is to be measured as to its sufficiency is set out in *In Re Delany*, 226 S.W.2d 366, 373[6] (Mo.App.1950) as follows: "[f]or one to be held of unsound mind so as to be disqualified from the control of his own property, there must be such mental impairment as to render him incapable of understanding and acting with discretion in the ordinary affairs of life. . . . and there is no basis for an adjudication that one is of unsound mind and incapable of managing his affairs unless it is shown that his powers of reasoning and comprehension have been so far destroyed or reduced by mental weakness resulting from one cause or another that he is incapable of knowing and appreciating the nature and consequences of his acts in respect to his own conduct and the management of his property. *Harrelson v. Flournoy*, 229 Mo.App. 582, 78 S.W.2d 895."

While the definition of unsound mind contained in *Delany* was rejected in *Matter of Brown*, 527 S.W.2d 395 (Mo.App.1975) the test to be applied to determine the ability of a person to manage his own affairs as quoted above was not mentioned. The above quoted definitions from *Delany* have long been followed in Missouri and this court sees no reason why such definitions should not continue to be followed.

Applying the standards set out in *Delany* to the evidence in this case, it can only be concluded that the evidence is insufficient to sustain a finding of Mrs. Armstrong's incompetency. No effort was made by those who sought to prove her incompetency to show Mrs. Armstrong's incapacity in relation to her business affairs. The most any of the witnesses who supported the petitioner stated was an occasional confusion or loss of memory. In contrast, Mrs. Armstrong's evidence showed she was handling her business affairs adequately with the assistance of friends. There was no evidence she had lost any money due to mismanagement or that she had failed or neglected to conserve her property. In fact, her testimony revealed a lady who knew the nature and extent of her affairs and who had a firm grip on her money.

▮ It has been recognized in this State that "there may exist impairment of the mind, confusion, and lack of clear understanding of reason, yet if there exists sufficient reason and clearness of mind for an understanding of the nature of his act or acts in the ordinary transactions of life" there could be a finding the person was of sound mind and capable of managing his own affairs. *In Re Bearden*, 86 S.W.2d 585, 594[12, 13] (Mo.App.1935). *Bearden* also recognized that the forgetfulness of old age should not be sufficient on which to base a finding of incompetency. Mere forgetfulness has also been held insufficient to show that a person is unable to manage his own

affairs in other jurisdictions. *Rhoads v. Rhoads*, 29 Ohio App. 449, 163 N.E. 724, 726[6] (1927); *In Re Baldridge*, 122 Cal. App.2d 752, 266 P.2d 103, 105 (1954). Petitioner Lance concedes some mental, as contrasted with physical, incapacity must appear to justify the appointment of a guardian. See 33 Mo.L.Rev. 1 (1968). It is apparent the evidence of Mrs. Armstrong's forgetfulness and confusion, not supported by any evidence to show she was incapable of knowing the nature and consequence of her conduct in the management of her property, is insufficient to support a finding that she is incompetent to manage her own affairs.

One other reason should be pointed out. None of the witnesses testified as to specific facts, except those noted with respect to loss of memory, on which they based their opinion of incompetency. Even the witnesses who detailed facts showing a loss of memory did not do so in relation to expressing an opinion of incompetency. It is well settled that an opinion of a witness, including a medical expert witness, relating to incompetency must be based on facts observed and detailed by the witness before the opinion can constitute substantial evidence. *Dowling v. Luisetti*, 351 Mo. 514, 173 S.W.2d 381, 385[1, 2] (1943). Thus, even though the record in this case contains a number of opinions that Mrs. Armstrong is incompetent and incapable of managing her own affairs, such opinion evidence does not constitute substantial evidence because the facts on which those opinions were based were not given by the witness.

The judgment is reversed.

All concur.