**In the Matter of the Alleged Incompetency of Grace Maude BAKER.**

**Verda BOWEN, Wanda Fitzgerald and Reba K. Thomas, Respondents,**

**v.**

**Grace Maude BAKER, Appellant.**

**No. WD 31081.**

Missouri Court of Appeals, Western District.

Aug. 4, 1980.

R. E. Moulthrop, Bethany, for appellant.

William J. Esely and Richard L. Parker, Bethany, for respondents.

Before TURNAGE, P. J. and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a judgment declaring appellant incompetent and declaring the appointment of a guardian for her person and estate. The judgment is reversed.

Appellant presents four points of error, but by virtue of the disposition of the matter, it suffices to allude only to that which charges that no substantial evidence was adduced to establish appellant was incompetent within the meaning of the law.

Appellant is an 86 year-old widow who resides in a local rest home. She is the life tenant in 240 acres of farmland as a beneficiary under her husband's will. Respondents hold a remainder interest in the farm property and are the stepdaughters of appellant. There is currently a tenant on this land who is paying rent to appellant for the use thereof.

The evidence upon which the circuit court based its judgment, in summary, amounted to the following facts. Verda Bowen, stepdaughter of appellant, testified she "imagined" that her stepmother had been in the rest home about four years. She said she had not seen or talked with her stepmother for four years prior to the hearing. She knew nothing about her stepmother's property, either real or personal. She was permitted over objection to give her opinion as to appellant's condition. The following illustrates the inadequacy of the evidence:

"Q. All right. Are you prepared to testify or answer any questions concerning Mrs. Baker's ability to do her own business . . . take care of her business affairs?

A. Yes.

MR. MOULTHROP: (attorney for appellant) I'm going to object to the form of the question because it calls for a conclusion on the part of this witness.

THE COURT: May we have you tell what you observed or what you've seen.

Q. All right. From your observations, can you tell the court what you've seen with regard to Mrs. Baker's ability to care for her own business?

A. Well, I don't think she can see.

MR. MOULTHROP: I'm going to object to that answer. I'm also going to further object because the witness already testified that she hasn't seen Mrs. Baker or talked to her for years.

THE COURT: Well, this is a rather informal proceeding. We'll take an objection and I should sustain it, but for the sake of brevity I'll probably let her answer. Go ahead.

Q. Just tell the court and Mr. Moulthrop what you have seen and yourself, observed yourself, not what you have concluded.

A. Well, I think she's had eye trouble for fifty years, and . . .

Q. Is she able to care for herself?

A. No. No.

MR. MOULTHROP: I have the same objection . . . That's a conclusion.

THE COURT: Let me ask some questions. Maybe I can shorten this. Have you determined whether or not she was able to read?

A. No, she cannot read.

Q. She cannot read? Do you know whether or not she can get by well enough to take care of her business?

A. No.

Q. I think that's all you need."

Respondents' evidence continued with the testimony of appellant's nephew, who testified he had visited appellant about two weeks prior to the hearing. This witness, after being questioned by the court regarding the amount of rent paid by the tenant, then was asked and answered as follows:

"Q. All right. Do you feel that Mrs. Baker's able to manage her own affairs, and if not, why?

A. Well, she can't see. She told me this morning she couldn't see a thing, and I asked her if she knowed anything about how much money she had or anything and she said she didn't have any idea."

Following the nephew's testimony, the following occurred upon the initiative of the associate circuit judge.

"THE COURT: Maybe we can shorten this. Do you have any further questions, then? Mrs. Baker, I know you can't see. I'm the judge and you've heard these two people testify. I will appoint an attorney for you, Mr. Moulthrop, who is a very able attorney and the purpose of this proceeding is to help you out. See? If you're not, if you don't feel like managing your own affairs, why this court would appoint a guardian for you, who, under . . . it would be under bond and work under the supervision of this court to take care of your money, and don't you think probably that you need some help in that respect?

MRS. BAKER: I've been having help in that respect.

THE COURT: Who's been doing it for you?

MRS. BAKER: Mr. and Mrs. Eisenbarger.

THE COURT: Eisenbarger? Are they here today?

MRS. BAKER: I think so.

THE COURT: Are they?

ATTORNEYS: Yes, they're here.

MR. MOULTHROP: They're the tenants on the farm, your honor.

THE COURT: Well, you're not able to do it yourself, though, are you?

MRS. BAKER: I can't see to do it.

THE COURT: No, I say, you're not able to do it yourself.

MRS. BAKER: No.

THE COURT: Yes. Okay. That's all. Thank you. Call Mrs. Eisenbarger. Let's offer in evidence the deposition of interrogatories, I guess you'd call it, of Dr. Bernie Williams, M.D. Have you examined these? Do you have any objection?"

The record does not reveal that witness Eisenbarger was ever called to the stand. The hearing ended with testimony by witness Ray Bowen relative to rentals being paid on comparable land and the introduction of what the circuit court referred to as ". . . the deposition of interrogatories, I guess you'd call it, of Dr. Bernie Williams, M.D."

The "deposition of interrogatories" of Dr. Williams, in summary, shows he had treated appellant on a regular basis for some time. Altogether, he estimated he had seen her on about 40 occasions. He testified she suffered from (1) Cerebro Vascular Insufficiency; (2) Congestive Heart Failure; (3) Blindness; (4) Anemia and (5) Vascular Insufficiency of the Hands. The doctor stated that appellant needed someone to help her on a day-to-day basis, but that she was capable of dressing herself. Then, the doctor was asked and responded to the following:

Q. "Based upon your observation medical and mental evaluations of Grace Maude Baker have you been able to reach an opinion within reasonable medical certainty on whether Grace Maude Baker would be physically and mentally able to manage her own business affairs and property?

ANSWER: No."

Q. "What is your opinion?

ANSWER: She seems to need help and guidance [sic] with her daily life even

though she seem [sic] alert in some areas."

It is curious to note that the only medical evidence upon the record denotes appellant's alertness in many areas.

The record in this case reflects, through comments by counsel and the court, that what precipitated this entire proceeding was the sale of a grain bin for a value of less than what, in respondents' judgment, the property was worth. There is no evidence, let alone sufficient evidence, to prove that the grain bin was that other than the separate personal property of appellant, totally unassociated with the life estate held by appellant.

Appellant's testimony in response to the court's inquiry, along with comments by counsel on the record, the latter of which is, of course, not evidence, illustrates that appellant had given a power of attorney to the tenant for the operation of the farm and by reference to her own testimony, it is shown that appellant was aware of the requirement of attending duties and responsibilities in relation to the property. This is illustrated in the following:

"MRS. BAKER: I've been having help in that respect.

THE COURT: Who's been doing it for you.

MRS. BAKER: Mr. and Mrs. Eisenbarger.

THE COURT: Eisenbarger? Are they here today?

MRS. BAKER: I think so.

THE COURT: Are they?

Attorneys: Yes, they're here."

It cannot be concluded that appellant's reduced vision serves as a basis for declaring her incompetent, and the remainder of the evidence herein does not suffice to support incompetency.

The evidence in this case is insufficient to sustain the judgment of the circuit court, which declared appellant incompetent. The question of sufficiency of the evidence, as related to the issue of incompetency, has already been decided by this court, see *In re Armstrong*, 573 S.W.2d 141, 144 (Mo.App. 1978), citing *In re Delany*, 226 S.W.2d 366 (Mo.App.1950), and other authority, and it suffices to say this court finds no necessity to restate the principles announced in *Armstrong*. It becomes necessary only to declare *Armstrong* as controlling and dispositive of the instant case. It would be well to point out that the evidence reflected in *Armstrong* appeared even more convincing than the evidence upon the record of the instant case. The fact remains that the evidence herein does not meet the standard required to support a finding of incompetency.

This court concludes that the evidence upon the record of the instant case, unto itself, is insufficient and additionally, pursuant to the principles announced in *Armstrong*, the circuit court erroneously declared appellant incompetent and erroneously ordered the appointment of a guardian for appellant.

For the reasons set forth herein, the judgment of the circuit court is reversed and all costs attending to these proceedings are assessed against respondents.

All concur.