**92**

### In the Matter of the Alleged Incompetency of Audrey GARDNER.

### No. WD 32315.

Missouri Court of Appeals,
Western District.

Aug. 11, 1981.

David A. Baird, Maryville, for Audrey Gardner.

Frank H. Strong, Jr., Maryville, (Strong, Strong & Prokes, Maryville of counsel), for petitioner Thelma Abrams.

Before PRITCHARD, P.J., and TURNAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

Audrey Gardner, a woman then about 85 years of age, was on October 30, 1980, adjudged to be "incapable of managing her property and caring for herself and is therefore incompetent." Thelma E. Abrams, the respondent, was appointed guardian, and Audrey appeals from the judgment.

The petition alleged that Audrey "is incapable because of senility or other incapacity of managing her property and caring for herself", with stated reasons for appointment of guardian: "Cerebrovascular insufficiency, transient ischemic attacks".

Appellant's three points are related and attack the judgment as being based on insufficient evidence that she was incompetent under § 475.010(3), RSMo 1978, in that: (1) There was no clear and convincing evidence that she suffered from senility or other incapacity; (2) That there was no clear and convincing evidence that she was incapable of knowing and appreciating the nature and consequence of her acts in respect to her conduct as a direct result of senility or other incapacity; and (3) The same point as (2), supra, but with respect to her property. No brief has been filed by respondent.

The evidence is this: Respondent, who is Audrey's daughter, testified that her mother required a guardian because she "does not eat right", "doesn't take her medicine", "gets weak", "falls around", and "staggers". Audrey had been recently hospitalized because of those problems. Edith Barrett, who resided in the same housing complex as Audrey, confirmed that she had fallen. Audrey's minister testified that he had seen her stumble, and her need for assistance when she walked into the church. About 2½ to 3 months before trial, Deputy Sheriff Johnson responded to an ambulance call for Audrey, being there for awhile before the ambulance arrived. She was lying on a divan, apparently could not breathe, and she could not walk. She had to have oxygen.

Many of Audrey's checks were introduced into evidence which were payable to various magazines, publishing houses, and for (some 30) sweepstake contests. Her income was from Social Security, supplements thereto, and welfare benefits. She had overdrafts on her checking account at times, as she admitted, but she testified that she had paid them. Audrey identified the checks and recalled most but not all the expenditures. She testified further that she cleaned her own apartment, made her bed, prepared her own meals, and that she did not need a guardian.

Two affidavits of Dr. Kenti Havaldar, M.D., concerning his examination of Audrey, were offered, but objections were sustained thereto, and properly so, upon the ground of hearsay. No medical evidence was otherwise presented.

Martha Campbell, who had lived next to Audrey for a little over 1½ years, had observed her daily activities. Audrey did her own housework, cooking, laundering, cleaning and canning. Martha took Audrey to the bank each month where she had the bank take out $100 for her rent, and she took $60 to $100 a month to buy her groceries. Martha also took Audrey to grocery stores where she picked her own meats, breads and vegetables. Audrey also made written lists for groceries for delivery by the stores, or purchases by Martha. Audrey had green beans and tomatoes and broke the ground to plant them, and thereafter she hoed them. She picked the vegetables and canned them. Audrey visited with other neighbors, and according to Martha, she had no problems taking care of herself.

§ 475.010(3) is: "An 'incompetent' is any person who is incapable by reason of insanity, mental illness, imbecility, idiocy, senility, habitual drunkenness, excessive use of drugs, or other incapacity, of either managing his property or caring for himself or both; * * *."

There was criticism of *In Re Delany*, 226 S.W.2d 366 (Mo. App. 1950), in the case of *In the Matter of Brown*, 527 S.W.2d 395 (Mo. App. 1975), with respect to the giving of an instruction requiring a finding by the jury that "by reason of such mental illness there is a total deprivation of her understanding", held not to be the definition of § 475.010(3), supra. The quoted phrase is excerpted from several others at 226 S.W.2d page 373 in *Delany*, as is pointed out in the case of *Matter of Armstrong*, 573 S.W.2d 141, 144 (Mo. App. 1978), the pertinent *Delany* definition, long followed in Missouri, being the ability of a person to manage his own affairs, which was not mentioned in the *Brown* case. In the *Armstrong* case, the judgment of incompetency was reversed because there was no competent evidence

that Mrs. Armstrong was incapable of knowing the nature and consequence of her conduct in the management of her property.

In the case of *Matter of E.S.H.*, 595 S.W.2d 411 (Mo. App. 1980), it is said, "An 'incompetent' is defined in the statute as one who, by reason of senility and mental illness, among other possible reasons, is incapable of managing his property and/or caring for himself."

The most that the evidence here shows is that Audrey did not eat right, did not take her medicine, she got weak, staggered and fell around. Although there is evidence that she had difficulty in keeping her bank account from being overdrawn, there is no evidence that she was incapable of looking after her own affairs or caring for herself. In fact, the strong testimony of Audrey and her neighbor, Martha Campbell, showed she was capable of caring for herself and managing her own affairs. There is no substantial evidence to support the judgment. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment is reversed.

All concur.