In re Alleged Incompetency of Edna E. RICHARD.

Guy Duncan RICHARD, Petitioner-Respondent,

v.

Edna E. RICHARD, Respondent-Appellant.

No. WD34007.

Missouri Court of Appeals, Western District.

July 19, 1983.

Mulford & Cole, Kirksville, for respondent-appellant.

Vance R. Frick, Kirksville, for petitioner-respondent.

Before LOWENSTEIN, P.J., and WASSERSTROM and MANFORD, JJ.

WASSERSTROM, Judge.

The principal question presented is whether the evidence supports the finding of the Probate Court that appellant Edna E. Richard ("Edna") is incompetent. We answer that question in the affirmative. We further hold that the admission of certain evidence of which complaint is made was nonprejudicial.

Edna at the time of the hearing before the Probate Court was 74 years of age. In February 1982 she entered the Boone County Hospital for open heart surgery, and on February 26, four coronary by-passes were performed. Her husband attempted to testify that following that operation, she suffered a series of strokes; but pursuant to a hearsay objection, that evidence was refused. Whatever the cause, Edna remained at the Boone County Hospital until May 28, 1982, at which time she was transferred to the Manor Care Nursing Home in Kirksville, Missouri. Edna continued to remain in the Nursing Home from the time of her arrival until the date of the hearing in the Probate Court which occurred July 22, 1982.

In June 1982 Edna's husband filed a petition in the Probate Court for the appointment of a guardian of Edna's person and estate. The petition showed that Edna possessed personal property of $200,000 and alleged that she had become incapable by reason of mental illness of managing her property or caring for herself. No member of Edna's family appeared in opposition to the petition, but as required by statute the Probate Court appointed Mr. James Cole, an attorney of Adair County, to represent her.

At the hearing held by the Probate Court without a jury, testimony was given by Edna's husband, by another lay witness, and by Dr. James D. Smith. That evidence showed that since her admission to the nursing home, Edna has been for the most part confined to bed and a wheelchair. With assistance, she can take up to three steps. She is unable to feed herself, cannot swallow, and takes nurishment solely through a tube.

Her ability to communicate is severely limited. She can nod and shake her head, she covers her head with a bedsheet to cut off contact, and she takes and squeezes the hand of anyone who approaches her bed. Her doctor was able to make out a single word "hurt" uttered by her, her husband (but no one else) believes he can make out the slurred responses "yes" and "no," but otherwise she makes only incomprehensible gutteral sounds. Even the nods and shakes of the head and the slurred responses to her husband are often wrong or inappropriate responses. She is unable to write other than to draw a few child like circles.

Although her husband has attempted to talk to her about her financial affairs, she evidenced no interest. She pays no attention to the telephone or to television or radio. She waves to people, but in one instance as she was being wheeled down the corridor in her wheelchair, she waved to a laundry bag.

Edna's present condition is in sharp contrast to her personality prior to the operation. In the past she was active in church affairs, managed her own finances, did gardening, frequently visited relatives, was very outgoing and well organized and is described as having been a witty, mentally sharp person.

Dr. James D. Smith, an osteopathic physician, treated Edna for coronary artery disease, upper respiratory infection and diabetes in 1978 and 1979 and has been her treating physician since May 1982. Dr. Smith is also the County Health Officer and in that capacity as well as in his general practice has had occasion to diagnose people who had physical as well as psychiatric problems and has made analysis of their psychiatric condition. He also had some exposure to psychiatry as part of his medi-

cal education. However, he had not conducted any psychiatric, psychological, nor neurological examinations of Edna.

Dr. Smith testified that Edna's condition which he observed in May 1982 was the effect of a massive cerebral vascular accident, commonly known as a stroke, and that such a stroke affects the mental faculties. He further testified that Edna's condition was "neurologically related" in the sense that signals from the brain cannot get through to her muscles. On cross-examination, appellant's counsel pressed Dr. Smith to say that Edna's problems were purely physical, but Dr. Smith refused to so state. To the contrary, Dr. Smith continued to say in a variety of ways that he believed Edna did not understand all that was said to her, that she made no response to verbal stimulation, that she had brain damage, and that her mental capacity had greatly deteriorated.

On the basis of that evidence, the Probate Court found that Edna was incompetent and was incapable of managing her property and caring for herself. The court therefore ordered that Edna be declared an incompetent person and that her husband be appointed guardian to have the custody of her person and charge of her estate.

On this appeal from that order, Edna's counsel raises the following points: (1) the trial court erred in permitting the testimony of Dr. Smith that appellant had "apparently suffered from a cerebral vascular accident;" (2) the court erred in permitting interrogation of Dr. Smith as to whether Edna was able to make responsible decisions with regard to her handling her property; (3) the court erred in permitting interrogation of Dr. Smith as to whether a stroke affects the mental faculties; and (4)

the court erred in finding Edna incompetent. Of these four points, the fourth is the most fundamental and will therefore be discussed first.

## I.

### *Sufficiency of Proof of Incompetency*

■ Section 475.030–1 [1] provides that letters of guardianship of the person or estate, or both, may be granted for any person adjudged incompetent. Section 475.010(3) defines an "incompetent" as "any person who is incapable by reason of insanity, mental illness, imbecility, idiocy, senility, habitual drunkenness, excessive use of drugs, or other incapacity, of either managing his property or caring for himself or both." [2]

■ Counsel for Edna does not deny that Edna is incapacitated from caring for her property and for herself. He insists however that this incapacity arises solely from physical reasons, so far as the evidence goes, and he strenuously denies that there has been any showing that Edna's capacity is due to any mental illness or defect. He correctly contends that a guardian may not be appointed under the statutes presently in effect unless the person alleged to be incompetent is shown to have an incapacity due in at least some degree to a mental component. The Missouri definition of "incompetent" is adopted from Section 196 of the Model Probate Code. The comment of the Committee which drafted Section 196 of the Model Probate Code explicitly stated that: "[A]n incompetent as defined in this section is one whose incapacity is mental." The requirement of a mental component in order for there to be "incompetency" was recognized in *Matter of Armstrong,* 573 S.W.2d 141 (Mo.App.1978). *See also Keen-*

---

1. All sectional references are to RSMo 1978 unless otherwise noted.

2. This section of the statutes has been drastically changed by H.C.S.S.C.S.S.B. 44 and 45, adopted by the General Assembly at its 1983 session. This amendment will permit the appointment of a guardian for an "incapacitated person" who will be defined as "one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that he lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness or disease is likely to occur." At the time of the preparation of this opinion the amendment just referred to has not yet been signed by the Governor. If so approved, the amendment will become effective September 28, 1983.

an v. Peevy, 267 Ark. 218, 590 S.W.2d 259 (1979). Counsel for Edna also correctly argues that this proof of a mental component must be by clear and convincing evidence. In re Delany, 226 S.W.2d 366 (Mo.App. 1950).

Notwithstanding the validity of the legal propositions just set forth, appellant's argument nevertheless fails for the reason that the evidence in this record justifies the finding of the Probate Court that Edna was incapacitated on mental as well as physical grounds. The evidence shows without contradiction that Edna has been frequently unable to recognize friends and relatives or to respond to them. Her ability to communicate is severely limited, and even the signals she can give are oft times wrong or inappropriate. She shows no interest in her financial affairs and pays no attention to telephone, radio or television. Although she does make an effort to wave to people, on at least one occasion she mistakenly waved to a laundry bag in the nursing home corridor.

■ All of the above was adequately shown by lay testimony which was unquestionably admissible and proper for consideration. Moreover, Dr. Smith testified that Edna's mental capacity had greatly deteriorated, that this was neurologically related and reflected brain damage. This opinion testimony was admissible and entitled to consideration. It is generally held that a practicing physician, although not a psychiatrist, is qualified to give an opinion as to the mental condition of the person he has examined and observed. 32 C.J.S. Evidence § 546(101)c (1964); See, e.g., White v. Director of Division of Labor, Dept. of L. & E., 30 Colo.App. 393, 493 P.2d 676, 677 (1972); Petty v. Folsom, 229 Ga. 477, 192 S.E.2d 246, 248 (1972); Matter of Aaron, 417 So.2d 105, 107 (La.App.1982); Trout v. Gandy, 424 P.2d 52, 54 (Okl.1967). Therefore, Dr. Smith's experience or training in the area of psychology and psychiatry merely affects the weight to be given to his testimony, not its admissibility. See Swope v. Printz, 468 S.W.2d 34, 40 (Mo.1971); Pate v. St. Louis Ind. Pack. Co., Div. of Swift &

Co., 428 S.W.2d 744, 750 (Mo.App.1968); Sanguinett v. May Department Stores Co., 228 Mo.App. 1161, 65 S.W.2d 162, 166 (1933); Griffin v. Evans Electrical Construction Co., 529 S.W.2d 172, 178 (Mo.App. 1975).

From these undisputed facts, the trial judge was well warranted in finding Edna to be "incompetent" and that such incompetency has a substantial mental component. See Parker v. Parker, 231 Ark. 635, 331 S.W.2d 694 (1960). See also Pazdernik v. Decker, 652 S.W.2d 319 [Missouri Court of Appeals Eastern District, 1983]. That factual determination by the trial court is entitled to acceptance here under Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976).

### II.

*Admission of the Challenged Evidence*

■ Appellant's Points 1, 2 and 3, all relating to elements of Dr. Smith's testimony, can be treated together. Point 1 challenges Dr. Smith's testimony that Edna apparently suffered a cerebral vascular accident; Point 2 challenges his testimony as to Edna's ability to make responsible decisions; and Point 3 relates to his testimony concerning whether a stroke in general affects the mental faculties.

■ In evaluating the sufficiency of the evidence under Point I of this opinion, we have given no consideration to Dr. Smith's testimony in the respects covered by appellant's Points 1 through 3, and we have concluded that the other evidence in the record is sufficient to support the trial court's finding. Even assuming that all of the evidence covered by appellant's Points 1 through 3 was improperly admitted, any such error must be considered harmless. In a court tried case, it is presumed that the trial court considered only the evidence properly received. Accordingly, the receiving of improper evidence in a court tried case such as here can hardly ever be grounds for reversal. Mansell v. Mansell, 583 S.W.2d 284, 287 (Mo.App.1979); N.K.M. v. L.E.M., 606 S.W.2d 179, 187 (Mo.App. 1980).

There being no prejudicial error, the judgment is affirmed.

All concur.